H. N. MEADE *v.* UNITED STATES CASUALTY COMPANY

(No. 7006)

Submitted January 26, 1932.    Decided February 9th, 1932.

*Clay S. Crouse* and *Painter & Locke,* for plaintiff in error.
*File, Goldsmith & Scherer,* for defendant in error.

WOODS, JUDGE:

This is an action by an automobile dealer to recover indemnity claimed to be due under the terms of a certain policy

in which the United States Casualty Company, in consideration of a stated premium, insured Allie Riddle, "the purchaser of an automobile from the Beckley Hudson-Essex Company, dealer, * * * against loss resulting directly and independently of all other causes from bodily injury effected solely through accidental means, and against loss resulting from sickness caused by disease" for a term of twelve months. Part I, of the policy, sets the indemnity at $54.70 per month; Part II provides, in case of disability caused by such injury or such sickness, for the payment of a monthly indemnity, from the date of the disability to the end of the contract period; and Part III provides, in case of death from accidental means, for payment of "an amount equal to the amount for which the company would have been liable for such monthly indemnity had the insured lived from the date of such injury to the date of the termination of this policy, less any indemnity paid under Part II hereof. * * * Indemnity under this policy for loss of life is payable to Beckley Hudson-Essex Company, creditor, herein called the beneficiary."

This writ is prosecuted from the action of the trial court in setting aside a verdict for the plaintiff, and awarding defendant a new trial.

Plaintiff holds to the position taken in the trial court, that it is entitled as benficiary to recover $438.32, the whole amount for which the casualty company would have been liable had the insured lived from the date of injury to the date of the termination of the policy. The defendant, however, insists that the word "creditor" limits its liability under the policy to the amount of the debt owing plaintiff at the time of the institution of the present action, which, according to plaintiff, amounts to $109.00.

The extent of liability in case of death, as set out in Part III, is unequivocal. But is plaintiff entitled to the full indemnity? This depends upon whether or not it is the unqualified beneficiary. To determine this we must look to the policy itself for the intention of the parties. The recital therein to the effect that insured had purchased a car from the plaintiff company, if standing alone, might be treated as merely

indicating an insurable interest. But that is not all, for the clause purporting to designate the beneficiary shows the insertion of the word "creditor" after plaintiff's name. Plaintiff contends that this also is merely indicative of an insurable interest; nothing more. However, we believe that the word "creditor" under the particular contract limits plaintiff's right to the amount due as creditor at the time of suit. This we think is borne out by other provisions in the policy. One is to the effect that indemnity for loss of life of insured is payable to the beneficiary, if surviving the insured, and otherwise to the estate of the insured. In another the insured retained the right to change the beneficiary, without the consent of the person originally named in the policy, as such. Insured was purchasing a car. His real purpose, according to our interpretation of the contract, was to provide against the contingency of having a car (upon which he had already made a substantial investment) repossessed for failure to make payments, should he, through accident, become disabled. In case of death, the indemnity would satisfy the remaining payments, thereby augmenting the value of his estate to the value of the automobile. If perchance the car had been paid for, then the estate would be entitled to the full indemnity. So far as the policy discloses plaintiff's interest therein was, during the life of the insured, dependent upon the latter's will.

From the record it appears that the car was repossessed and resold sometime after insured's death, and that there was only $109.00, if anything, due to plaintiff on the purchase price at the institution of this action. Its interest is limited to the debt actually due, whatever the amount. Its relationship to the policy is somewhat analagous to that of a mortgagee in a fire policy where loss, if any, is payable to him as his interest may appear. The reference to "Beckley Hudson-Essex Company, creditor" is nothing more than a conditional appointment that on contingency some portion of the indemnity shall go to it; that is, if any of the debt remains unpaid.

It is a general rule that where one makes a contract giving another a beneficial interest, that other may sue. We have

a statute authorizing one to proceed in his own name upon a covenant or promise made by a third party for his *sole* benefit. Code 1931, 36-1-7 and 55-8-12. Also, a mortgagee may sue where his interest is equal to or in excess of the loss. *Colby* v. *Parkersburg Ins. Co.,* 37 W. Va. 789, 17 S. E. 303; *Ritchie County Bank* v. *Insurance Co.,* 55 W. Va. 261, 47 S. E. 94; *Fayetteville B. & L. Asso.* v. *Fire Ins. Co.,* 105 W. Va. 147, 141 S. E. 634; *Tilley* v. *Connecticut F. Ins. Co.,* 86 Va. 811, 11 S. E. 120.

In view of our interpretation of the contract, and the admission on the part of plaintiff that only $109.00 is due on the debt, it cannot be said that he stands in the shoes of a beneficiary, such as is entitled to bring an action at law on an insurance policy. Code 1931, 36-1-7 and 55-8-12, heretofore referred to, has been construed by this court in a number of cases. *State ex rel. Indemnity Company,* 99 W. Va. 277, 128 S. E. 439, and cases there cited. In that case we held that unless such contract was made for the *sole* benefit of the party, such party could not sue at law but must be left to a suit in equity. Citing *King* v. *Scott,* 76 W. Va. 58, 84 S. E. 954, for this position. This is entirely consistent with legal principles. In the instant case no injury would result from such a procedure to any of the parties concerned. The rights of the insurer can be protected by the payment of the money in to court, and the insurer may obtain indemnity against any subsequent suit by the plaintiff, by the action of the court into which the money is paid.

The remaining assignment of eror involves the question of whether or not Allie Riddle's death resulted directly and independently of all other causes from bodily injury effected solely through accidental means. The question thus raised has been fully discussed recently by this court. *Tabor* v. *Commercial Casualty Co.,* 104 W. Va. 162, 139 S. E. 656; *Martin* v. *Mutual Life Insurance Co.,* 106 W. Va. 533, 146 S. E. 53. The burden of proving the injury resulting in the death of the insured was accidental is upon the plaintiff. The defendant in its endeavor to prove the contrary, sought, among other things, to discredit the testimony of S. M. Cassidy, who was present at the time of the affray, in which

the insured sustained the injury which later resulted in his death. It appears from the record that Cassidy testified to a state of facts tending to support plaintiff's theory that the injury was accidental. The proffered testimony was to the effect that Cassidy, immediately after the fight, was very drunk and was arrested and fined for being in such condition. This testimony, it is contended, not only went to sustain the fact that he was in this condition at the time of the fight, but it also would serve to discredit, or impeach, the testimony of the witness, and would be proper to be considered by the jury in determining the weight of the testimony. It cannot be questioned that intoxication involves a numbing of the faculties so as to affect the capacity to observe, and it is always competent on cross-examination to elicit from the witness all facts tending to show his means of obtaining a correct and accurate knowledge of the facts to which he bears testimony, and his powers of discernment, memory and description. 1 Greenleaf., sec. 446; 3 Rice on Ev. 287. Under the foregoing principle, it would seem that the proffered evidence concerning the witness' condition should have been admitted, and that it was error to refuse it. The testimony of Cassidy went to the crux of the case as to who was in fault, or who provoked the assult. The testimony of his condition as to sobriety and ability to know what transpired at the beginning, and during the fight, was proper to be considered by the jury.

We therefore reverse the trial court on the procedural question and dismiss the case, with leave to the plaintiff to take such further action as he may be advised.

*Reversed; Judgment for defendant.*