CHARLES HARTMANN

*v.*

THE WINDSOR HOTEL CO., *et al.*

(CC 741)

Submitted January 12, 1949. Decided

February 15, 1949.

308

RILEY, JUDGE, *not* participating.

*Handlen, Garden, Matthews & Hess, G. Alan Garden* and *James P. Clowes,* for plaintiff.

*Goodwin, Nesbitt, Spillers & Mead,* for defendants.

Fox, Judge:

On the 9th day of July, 1946, The Windsor Hotel Company, a corporation, was the owner of what is known as the Windsor Hotel property in the City of Wheeling, which it appears it contemplated selling as early as May 31, 1940, on which date it entered into a lease with Vernon B. Derrickson by which it leased the said property for a term of five years, with the privilege of an extension for an additional five years. The lease appears to have been extended beyond the five year period. That lease contained the following provision:

> "It is agreed by the parties hereto that should the Lessor receive a bona fide offer for the purpose (sic) (purchase?) of the property hereby leased at any time during the term of this lease, then said offer shall be immediately communicated to the Lessee and the Lessee shall have Thirty (30) days in which he may purchase said property under the terms and conditions contained in said offer."

Sometime prior to July, 1946, the Hotel Company entered into negotiations for the sale of its hotel property with one DeWitt B. Bayer, and these negotiations progressed to the point that on July 9, 1946, the said Bayer addressed to the Hotel Company a letter, the pertinent provisions of which, so far as this litigation is concerned, read as follows:

> "The undersigned hereby offers to purchase the Windsor Hotel property, including all buildings, equipment, furniture, furnishings and personal property of every kind, nature and description, contained in said buildings or used in the operation of said hotel property or any of the leased portions thereof for the sum of Three Hundred a n d Fifteen Thousand D o l l a r s ($315,000.00)."

"In connection with said purchase, you will pay a brokerage commission of Fifteen Thousand Dollars ($15,000.00) to Charles Hartmann, of Wheeling, West Virginia, which is the full and complete brokerage commission in connection with the sale of this property; should said brokerage commission exceed the sum of Fifteen Thousand Dollars ($15,000.00) the undersigned will pay any excess." * * *

* * * "This offer shall be open for acceptance by you subject to the terms of that certain Lease dated the 31st day of May, 1940, by August 1, 1946, and shall be subject to complete acceptance by you on or before August 15, 1946; otherwise, at the option of the undersigned, said offer shall become null and void and the earnest money tendered herewith shall be forthwith returned to the undersigned."

This offer also contained a statement that Bayer had caused to be deposited with a bank in Wheeling, the sum of $10,000.00 as earnest money, and an agreement to deposit with said bank an additional sum of $15,000.00 within three days after the acceptance of the offer, and that the balance of the purchase price would be deposited within eight days after notification of the acceptance of the offer.

On July 29, 1946, The Windsor Hotel Company wrote to Bayer the following letter:

"A Special Meeting of the Stockholders of The Windsor Hotel Company was held today at the Windsor Hotel to consider your offer of purchase of the property of that Company, dated July 9, 1946, for the sum of $315,000.00 which amount includes a brokerage commission of $15,000.00 and an equivalent offer, if made, by Vernon B. Derrickson."

"Your offer was read in open meeting and carefully considered and more than 60% of the stock voted in favor of accepting your offer, subject to the terms of the Lease dated the 31st day of May, 1940, by the terms of which Lease the

Lessee, Vernon B. Derrickson, is given the right and privilege of purchasing said property of the Company within 30 days after notification *under the same terms and conditions.*"    (Italics ours.)

"You may, therefore, consider your offer accepted, subject to the rights of Vernon B. Derrickson under his said Lease, and may act accordingly."

"We shall advise you on or before August 15, 1946, of the action of Vernon B. Derrickson in making an equivalent offer."

On August 1, 1946, The Windsor Hotel Company addressed a letter to Bayer which reads as follows:

"This is to notify you that Vernon B. Derrickson, lessee of the Windsor Hotel in this City, whose Lease is dated May 31, 1940, has elected to purchase all of the property of The Windsor Hotel Company under the same terms and conditions of your offer dated July 9, 1946, and, as you know, Vernon B. Derrickson, as lessee, has that right and privilege under the terms of his said Lease."

"This Company, therefore, advises you that it cannot make complete acceptance of your offer and, under the circumstances, must accept the offer of Vernon B. Derrickson.   Mr. Derrickson has been advised of the acceptance of his offer and you are now at liberty to withdraw the earnest money of $10,000.00 deposited by you with the Half Dollar Trust & Savings Bank, of this City."

Vernon B. Derrickson had, on July 1, 1940, assigned benefit of his lease agreement with the Hotel Company to Derrickson Hotels, Inc.   On September 10, 1946, The Windsor Hotel Company conveyed said property to Derrickson Hotels, Inc. the consideration named in said deed being $10.00 and "other good and valuable consideration"; but the grantee assumed the payment of the outstanding bonds against the said hotel property, stated in the Bayer

offer aforesaid to be $166,000.00. It is admitted in brief of counsel for the Hotel Company that the amount which was actually paid for the property by Derrickson Hotels, Inc. was the sum of $300,000.00.

Plaintiff herein being of the opinion that he was entitled to recover the sum of $15,000.00, stipulated to be paid to him under the offer and acceptance made by Bayer and the Hotel Company, aforesaid, instituted this suit in the Circuit Court of Ohio County, naming as defendants The Windsor Hotel Company, a West Virginia Corporation, DeWitt B. Bayer, Vernon B. Derrickson, Derrickson Hotels, Inc., a West Virginia Corporation, and The Blades Corporation, a West Virginia Corporation, to which latter corporation the hotel property had been conveyed prior to the institution of said suit.

The bill of complaint filed at the August Rules, 1947, set up the matters above stated, and prayed that the "proper defendants, and each of them, may be decreed to pay unto the plaintiff all sums * * * this Honorable Court shall find to be due and payable unto this complainant from said defendants, or any of them, together with legal interest thereon, and that the complainant may have such further or other relief in the premises as the nature of the circumstances of this case may require, and to this Honorable Court shall seem meet." With the bill is exhibited the lease agreement aforesaid, and the assignment thereof; the deed from The Windsor Hotel Company to Derrickson Hotels, Inc. dated September 10, 1946; and also the deed from Derrickson Hotels, Inc. to the Blades Corporation, a corporation, dated September 20, 1946.

On September 8, 1947, the defendants named in the bill, other than DeWitt Bayer, appeared and filed their joint and several demurrer to the bill of complaint, assigning seventeen separate grounds. We do not deem it necessary to set out these grounds in this opinion because we will attempt to deal with them, in a general way, in our discussion of the case. On November 28, 1947, the trial court sustained said demurrer, and the court, on its own motion, certified the matters of law arising thereon to

this Court. The matters were certified in the exact form as the points were raised in the demurrer to the bill aforesaid. On such certification, we docketed the case for hearing.

It must be apparent that the claim of plaintiff is based upon his contention that there was a complete and binding contract for the sale of the Windsor Hotel property, under the terms of the offer of July 9, 1946, and its acceptance by the Hotel Company on July 29, 1946. We must, therefore, determine whether such a contract was thus created. The basis of the trial court's ruling on the demurrer was that acceptance of the offer made by Bayer to the Hotel Company was conditional, and that no contract was ever created between the Hotel Company and Bayer for the sale of the hotel property. If this be true, the plaintiff has no rights which this Court may enforce.

A reading of the correspondence quoted above clearly shows that each of the parties who engaged therein had in mind that there could be no consummation of any sale of the hotel property until Vernon B. Derrickson, the lessee thereof, had been accorded the right, under his lease, to purchase the same "under the terms and conditions contained in said offer". In Bayer's letter of July 9, 1946, addressed to the Hotel Company, he stated that: "This offer shall be open for acceptance by you subject to the terms of that certain Lease dated the 31st day of May, 1940." And in the Hotel Company's letter of July 29, 1946, the acceptance of said offer was made "subject to the terms of the Lease dated the 31st day of May, 1940, by the terms of which Lease the lessee, Vernon B. Derrickson, is given the right and privilege of purchasing said property of the Company within 30 days after notification under the same terms and conditions". Thus, it appears that both parties understood from the beginning that they were negotiating subject to the right of Vernon B. Derrickson to purchase the property on the same terms and conditions of any offer Bayer might make. There

is further emphasis on this point by the provision of the Bayer offer which provides that:

> "This offer shall be open for acceptance by you subject to the terms of that certain Lease dated the 31st day of May, 1940, by August 1, 1946, and shall be subject to complete acceptance by you on or before August 15, 1946; otherwise, at the option of the undersigned, said offer shall become null and void and the earnest money tendered herewith shall be forthwith returned to the undersigned."

Clearly what the parties had in mind was that after Bayer's offer of July 9, 1946, Derrickson would have thirty days after that offer had been communicated to him, during which period he might exercise his option to purchase, so that it could not be contemplated that there could be a full consummation of the sale prior to August 15, 1946. In other words, there could be no sale of the property made before that date which Derrickson would not have had the right to defeat by the exercise of his right to purchase, and both the Hotel Company and Bayer attempted to provide for the contingency that Derrickson might choose to elect to purchase under the terms of his lease.

In our opinion, the acceptance contained in the Hotel Company's letter of July 29, 1946, should not, in the circumstances of this case, be treated as a conditional acceptance. We think the Hotel Company unconditionally bound itself to sell the property to Bayer for the sum of $315,000.00, of which amount it agreed to pay to the plaintiff herein the sum of $15,000.00 as brokerage fees. The fact that the legal effect of this acceptance could be nullified at the election of Derrickson, did not, in our opinion, release the Hotel Company from the binding effect of such undertaking, except in the event that Derrickson should, within the thirty days after Bayer's offer had been communicated to him, elect to purchase the property on the same terms and conditions as those contained in Bayer's offer. Had such election

not been made by Derrickson, either the Hotel Company or Bayer could have enforced the contract between them created by the offer and acceptance aforesaid, and Hartmann's right of recovery would have been clear.

It seems quite clear, from the allegations of the bill, that Derrickson never at any time made the Hotel Company an offer for the purchase of the Windsor Hotel property on the same terms and conditions as those contained in the Bayer offer of July 9, 1946. On the contrary, he was permitted to purchase the property at the sum of $300,000.00, and it was conveyed to his assignee, the Derrickson Hotels, Inc., for that consideration, which was $15,000.00 less than the Hotel Company would have received under the Bayer offer. Of course, that $15,000.00 is the issue of this controversy. The Hotel Company, under its acceptance, would have been called upon to pay the plaintiff $15,000.00, and the net amount it would have received for its hotel property would have been the same amount as that received from Derrickson Hotels, Inc. when it conveyed the property to it.

We are not unmindful of the rule which requires that an offer for purchase of real estate, or for that matter any other type of property, must, to create a contract, be accepted unconditionally. The minds of the parties to an agreement do not meet until there is an offer and an unconditional acceptance. Here, we think there was an offer made by DeWitt Bayer, in which the existence of the Derrickson lease was taken into consideration, and provided for, both in the offer and in the acceptance. We think the acceptance of the Bayer offer was unconditional, except that, as both parties realized at the time, the contract of sale, which, as between the parties, had been made at that time, could be nullified by the act of a third party, in this case Derrickson. The whole point is that the Hotel Company permitted Derrickson to defeat the contract thus entered into between it and Bayer, on the basis of an offer of purchase which was not upon the same terms and conditions as those con-

tained in the Bayer offer. Derrickson had no right, under his lease, to purchase the property on any terms other than those contained in the Bayer offer, and the Hotel Company, in permitting him to do so, breached its agreement with Bayer, from which the plaintiff was entitled to benefit, and this, alone, furnishes sufficient basis for a recovery by the plaintiff herein. Its claim that it never made a valid and binding agreement to sell the property to Bayer is not sustained by the record.

If this was a binding agreement between the Hotel Company and Bayer, subject to be defeated by the election of Derrickson to purchase the property, it becomes important to consider the standing of the plaintiff, Hartmann, as the beneficiary creditor of the Windsor Hotel Company. We may say at this point that no liability has at any time attached to Vernon B. Derrickson, Derrickson Hotels, Inc. or the Blades Corporation, for the reason that they have not entered into any undertaking to pay to the plaintiff any sum of money whatever. This renders it unnecessary to deal with the cases cited to sustain the theory of failure to show liability on these parties.

But, the doctrine that a person, though not a party to an agreement, may be entitled to enforce rights created for his benefit in a contract made by other parties, is well settled in this country. We would be at a loss to enforce liability on insurance contracts, bonds and in many other situations, if this rule did not prevail. It is said to have originated in England, but to have been somewhat departed from in that country where liability in such cases is now largely enforced on the theory of a trust relation, and in some American jurisdictions the rule seems not to be favored. However, in 12 Am. Jur. 825, it is said:

> "Stated in general terms and leaving out of consideration the limitations recognized in various jurisdictions, the rule in a great majority of American jurisdictions is that a third per-

son may enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. In other words, it is not necessary that any consideration move from the third party; it is enough if there is a sufficient consideration between the parties who make the agreement for the benefit of the third party. This doctrine, originally an exception to the rule that no claim can be sued upon contractually unless it is a contract between the parties to the suit, has become so general and far-reaching in its consequences as to have ceased to be simply an exception, but is recognized as an affirmative rule, subject to certain limitations and exceptions."

This rule is recognized in 2 Williston on Contracts, in its discussion of contracts for the benefits of third persons, beginning with Section 347 and covering a wide range. In the Restatement of the Law, under the head of Contracts, Chapter 6, the right of such recovery is recognized and beneficiaries are classified under three headings: "Donee Beneficiaries", "Creditor Beneficiaries", and "Incidental Beneficiaries", and each are defined.

We do not doubt that a third person, for whose benefit two parties have made a promise, in a contract between them, to pay money or to perform service, may enforce such promise in a court of equity, in all cases where the same may not be enforced in an action at law. In *Standard Oil Company v. Smith,* 116 W.Va. 16, 178 S.E. 281, this Court held:

"When a covenant in a bond provides security for a class, not a party to the bond, a member of the class may sue in equity on the bond for the benefit of himself and others of the class."

In the body of the opinion it is stated:

"Because the covenant is for the protection of a class no one of whom has a distinctive right to the benefit, an action at law is not per-

missible under the *Johnson* case. But we have repeatedly held that one of such a class could proceed in equity for the benefit of himself and the other members of his class. See *King v. Scott,* 76 W.Va. 58, 62 84 S.E. 954; *Petty v. Warren,* 90 W.Va. 397, 402-3, 110 S.E. 826; *State ex rel. v. Royal Ind. Co.,* 99 W.Va. 277, 289, 128 S.E. 439; *State ex rel. v. Arthur,* 106 W.Va. 559, 560, 146 S.E. 619; *Meade v. Casualty Co.,* 111 W.Va. 504, 163 S.E. 8. Under this holding, the distinction between a private or a public bond or between a sealed on an unsealed instrument is not material."

To the same effect is the case of *Aetna Life Insurance Co. v. Maxwell,* 89 F. (2d) 988, a case decided by the application of West Virginia law. It was there held:

" 'Creditor beneficiary' has no rights under West Virginia statute permitting third party who is sole beneficiary of contract to sue thereon, but under West Virginia law 'creditor beneficiary' has substantive right under common law of state to recover against promisor in suit in equity."

To support this statement many West Virginia cases are cited including *Standard Oil Co. v. Smith, supra,* and references also made therein to Williston on Contracts, Section 365, 368.

Code, 55-8-12, provides that:

"If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise."

Plaintiff herein would have no right of recovery under that section, because the contract, under which he claims, was not made for his sole benefit. Such contract was

made for the benefit of the Hotel Company, Bayer and the plaintiff herein, and he must, necessarily, pursue his remedy in a court of equity. Since the right of recovery existed, and the above quoted statute closed the courts of law to the plaintiff, in the circumstances of this case, his right to recovery may well rest on the well known rule of equity that there can be no wrong without a remedy. In a case where the contract relied upon was made for the sole benefit of an individual, he would probably be required to exercise his right to sue at law, and be barred from suing in equity, on the grounds that he has an adequate and complete remedy at law.

In the trial court's opinion, it was stated that "* * * it is held that there was no contract between defendant and plaintiff". We do not understand it to be contended that there was such a contract, in the sense that plaintiff was a party to a contract, or that there was privity of contract between plaintiff and the Hotel Company. The contract, as we hold, was a contract between The Windsor Hotel Company and Bayer, under which, though not a party to that contract, rights were created in favor of the plaintiff herein which he can now enforce in a court of equity. As we understand it, the situation of a creditor beneficiary does not exist, nor can it exist, where a party claims the benefit of a contract as a party thereto. Our statute on the question, Code, 55-8-12, expresses that idea. The subject has been fully dealt with in an article appearing in Vol. XLIX, West Virginia Law Quarterly 134, and in discussing the statute, it was said:

> "Analysis of the language of this statute indicates that the legislature had at least five objects in view: (1) by the use of the word 'covenant' to change the rule that only the parties to a sealed indenture (as distinguished from a deed-poll) could sue upon it; (2) to permit a joint promisee to sue without the joinder of his copromisees, where the joint promisee was actually a party to a contract which was made for his sole benefit; (3) by permitting action 'in

> his own name' to overcome the objection mentioned in *Ross v. Milne* as to the nonenforceability at law of choses in action in the name of the assignee; (4) to change the rule that the consideration must move from the plaintiff; and (5) to abolish the doctrine of privity of contract."

The whole theory of the right of a creditor beneficiary to recover rests on the assumption that he was not a party to the contract under which he seeks to recover.

The defendant, The Windsor Hotel Company, does not appear to us to be in a position to avoid liability in this case. It leased its property to Vernon B. Derrickson on May 31, 1940, and, apparently, at that time contemplated that it might want to sell the same during the term of the lease. It gave to its lessee what may be termed a favored position, and provided that in the event it should receive a *bona fide* offer of purchase for the property during the term of its lease, it would immediately communicate that offer to the lessee, and that he might have the right, within thirty days thereafter, to purchase the property under the terms and conditions of said offer. That is a perfectly plain and simple statement about which there should be no misunderstanding. It seems clear that during the period of its negotiations with De-Witt B. Bayer it acquainted him with the terms of this lease, and of Derrickson's rights thereunder, because in Bayer's offer of July 9, 1946, he refers to the lease and provided, in effect, that any acceptance of his offer should be considered as subject to the terms of the lease; and when, on July 29, the Hotel Company accepted Bayer's offer, it did so subject to the terms of the lease. Then on August 1, 1946, the Hotel Company advised Bayer that Derrickson had elected to purchase the property under the terms of his lease "under the same terms and conditions of your offer dated July 9, 1946". As it now develops, no such election was ever made, but, on the contrary, The Windsor Hotel Company permitted Derrickson to purchase the property, not on the terms

of the Bayer offer, but for a consideration of $15,000.00 less than Bayer would have paid. Furthermore, in the letter of the Hotel Company to Bayer, dated July 29, 1946, it was stated that at the time they considered Bayer's offer they also considered an equivalent offer, if made, by Vernon B. Derrickson. At all times it seems to have been understood that Derrickson or his assignee, under his lease, was not entitled to purchase this property except upon the same terms and conditions as those provided for in a *bona fide* offer therefor, and that Bayer's offer of July 9, 1946, was such an offer is not questioned. The Windsor Hotel Company then had the power to provide for the payment of brokerage fees, now claimed by the plaintiff, for which provision was made in the Bayer offer, and in the acceptance thereof. For some reason it chose to waive its power in this respect, and permit Derrickson Hotels, Inc. to purchase the property without providing for the payment of brokerage charges. That was a clear breach of its contract with Bayer and such breach operated to destroy plaintiff's right to brokerage fees provided for therein. That brokerage charges were expected to accrue and be paid is evident from the terms of the Bayer offer, and its acceptance, because it is specifically mentioned in both the offer and its acceptance. We do not discuss this conduct on the part of the Hotel Company. Apparently it could not expect to profit thereby, and the only effect of its act in selling the hotel property to Derrickson Hotels, Inc. was to deprive plaintiff herein of compensation for services which apparently he had rendered in connection with the sale of this property. The brokerage fees involved are understood to be the usual fees for services of that character, and we need not consider the situation which might arise in the event of a claim for brokerage fees not made in good faith.

On the whole, we are of the opinion that the Circuit Court of Ohio County erred in sustaining the demurrer of the Windsor Hotel Company to plaintiff's bill; but, we are of the opinion that the demurrer interposed by

Vernon B. Derrickson, Derrickson Hotels, Inc. and the Blades Corporation was properly sustained. We, therefore, reverse the ruling of the said Circuit Court of Ohio County, in so far as the demurrer of The Windsor Hotel Company, aforesaid, was sustained; and we affirm its ruling in sustaining such demurrer as to the other defendants above named.

*Rulings reversed in part,*
*sustained in part.*