GARNET S. PETTUS, *et al.*

*v.*

OLGA COAL COMPANY, *A Corporation*

(No. 10481)

Submitted September 16, 1952. Decided November 11, 1952.

*Kingdon & Kingdon* and *Frederick T. Kingdon,* for appellants.

*Crockett & Tutwiler* and *Joseph M. Crockett, Baker, Hostetler & Patterson* and *Stephen C. Thayer,* for appellee.

GIVEN, JUDGE:

Twenty-four employees of defendant, Olga Coal Company, at its Coalwood coal mining operation, instituted an action in the Circuit Court of McDowell County, each claiming a certain sum alleged to be due because of a breach by the company of the provision of a contract between it and the United Mine Workers of America, relating to a thirty minute lunch period. The action was, by the court, on motion of plaintiffs, transferred to the chancery side of the court and referred to a commissioner in chancery. After the taking of testimony and the completion of the report of the commissioner in chancery, the circuit court dismissed the cause.

Claimants are classed as inside employees and, with the exception of two who were operators of a special cutting machine, were "tram crew-men" engaged in the maintenance and operation of the trams and tramways in and out of the mine. The basis of the respective claims of the several employees is that the terms of the then existing contract between the company and the United Mine Workers of America required that the company allow the employees a thirty minute period during each work shift for lunch, the period to be designated by the company and the employees to be paid therefor. Claimants further say that no lunch period was ever designated by the company, but that they were forced to work entire shifts, which resulted in overtime work of thirty minutes for each shift worked during a period of approximately seventeen months. The further contention of claimants is that the company, during the course of attempted arbitration, expressly agreed to pay the claimants the overtime for which plaintiffs have sued.

Defendant contends that there is a misjoinder of parties; that the claimants can not maintain this proceeding in equity; that the provisions set out in the contract relating to arbitration not having been fully complied with, claimants have no cause of action; that it was not required, under the contract, to designate any lunch period; and that the rule *de minimis non curat lex* applies, requiring dismissal of the cause.

As to inside employees, the contract in question provides:

"1. (a) For all inside employees a work day of eight hours from portal to portal is established, including a staggered thirty minutes for lunch, and without any intermission or suspension of operations throughout the day. For inside day workers these eight hours shall be paid for at straight time rate. Overtime beyond eight hours per day and forty hours per week shall be paid for at time and one-half with no pyramiding of overtime. Straight time rates for inside day workers shall be the

total daily normal shift earnings for eight hours divided by eight (8) hours."

The provisions of the contract relating to arbitration, under the heading "SETTLEMENT OF LOCAL AND DISTRICT DISPUTES", read:

"Should differences arise between the Mine Workers and the Operators as to the meaning and application of the provisions of this agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences immediately:

"1. Between the aggrieved party and the mine management.

"2. Through the management of the mine and the Mine Committee.

"3 Through District Representatives of the United Mine Workers of America and a commissioner representative (where employed) of the coal company.

"4. By a board consisting of four members, two of whom shall be designated by the Mine Workers and two by the Operators.

"5. Should the board fail to agree the matter shall, within thirty (30) days after decision by the board, be referred to an umpire to be mutually agreed upon by the Operator or Operators affected and by the duly designated representatives of the United Mine Workers of America, and the umpire so agreed upon shall expeditiously and without delay decide said case. The decision of the umpire shall be final. Expenses and salary incident to the services of an umpire shall be paid equally by the Operator or Operators affected and by the Mine Workers.

"A decision reached at any stage of the proceedings above outlined shall be binding on both parties hereto and shall not be subject to reopening by any other party or branch of either association except by mutual agreement."

.Another pertinent provision of the contract, under the heading "MISCELLANEOUS", reads:

"3. The contracting parties agree that, as a part of the consideration of this contract, any and all disputes, stoppages, suspensions of work and any and all claims, demands or actions growing therefrom or involved therein shall be by the contracting parties settled and determined exclusively by the machinery provided in the 'Settlement of Local and District Disputes' section of this Agreement; or, if national in character, by the full use of free collective bargaining as heretofore known and practiced in the industry."

The first question confronting the Court relates to the right of claimants to maintain this proceeding in equity. The answer to this question depends upon what position they occupy with reference to the contract. As above noted, the contract was between the employer and the union, the employees not being parties to the contract. The contract discloses that it was "for the exclusive joint use and benefit of the contracting parties", and that the union "is recognized herein as the exclusive bargaining agency representing the employees * * *." Moreover, the employees were dues paying members of the union. It is clear, we think, that the contract was made principally, but not solely, for the benefit of the employees. The union derives certain rights and privileges under the contract. Therefore, Code, 55-8-12, providing, in effect, that where a contract is made for the sole benefit of the person with whom it is not made, or with whom it is made jointly with others, such person may maintain an action thereon in his own name, does not authorize the maintenance of the present suit. The present suit is not an "action" at law, and claimants are not the sole beneficiaries under the contract. See *Hartmann v. Windsor Hotel Co.,* 136 W. Va. 681, 68 S. E. 2d 34; *Erwin v. Bethlehem Steel Corporation,* 134 W. Va. 900, 62 S. E. 2d 337; *United Dispatch, Inc. v. E. J. Albrecht Co.,* 135 W. Va. 34, 62 S. E. 2d 289. Moreover, the employees have ratified the con-

tract. They have heretofore claimed benefits thereunder, and this proceeding is based thereon. See *West* v. *Railroad Co.* 103 W. Va. 417, 137 S. E. 654. Of some significance in determining the question posed is the holding that one or more persons composing a class, under a third party contract, in certain circumstances, may prosecute an action under Code, 55-8-12. See *United Dispatch, Inc.* v. *E. J. Albrecht Co., supra; Oil Co.* v. *Smith,* 116 W. Va. 16, 178 S. E. 281.

" 'Third persons beneficiaries under a contract, although not parties to it, may be divided into three classes: (1) Such person is a donee beneficiary if the purpose of the promisee in obtaining the promise of all or part of the performance thereof, is to make a gift to the beneficiary, or to confer upon him a right against the promisor to some performance neither due [nor supposed] or asserted to be due from the promisee to the beneficiary; (2) such person is a creditor beneficiary if no intention to make a gift appears from the terms of the .promise, and performance of the promise will satisfy an actual [or supposed] or asserted duty of the promisee to the beneficiary; (3) such person is an incidental beneficiary if the benefits to him are merely incidental to the performance of the promise and if he is neither a donee beneficiary nor a creditor beneficiary.' " 2 Williston on Contracts, Section 356.

It seems clear that claimants here fall within the second, or creditor beneficiary, classification. There existed no intention on the part of the promisee in the contract to make a gift to the employees, and there was a duty, on the part of the promisee, for which union membership dues were paid, to see that the employees obtained a reasonable lunch period.

Black's Law Dictionary, Fourth Edition, defines creditor beneficiary as follows: "A third person to whom performance of promise comes in satisfaction of legal duty. *Breaux* v. *Banker,* Tex. Civ. App., 107 S. W. 2d 382, 389;

*Vail* v. *Reuben H. Donnelley Corporation,* 56 Ohio App. 219, 10 N. E. 2d 239, 241."

Having found that claimants fall within the classification of creditor beneficiaries, can they sue in chancery? We think the answer is furnished in the decision in *Aetna Life Insurance Co.* v. *Maxwell,* 89 Fed. 2d 988, applying the West Virginia Law. Referring to what is now Code, 55-8-12, the Court says: "* * * Obviously this statute is not applicable to the pending case for the promise of the insurance company to defend and indemnify the insured against loss and expense resulting from claims for damage on account of malpractice and mistake, and to pay the amount of any judgment against the insured on this account whether satisfied or not, was not made solely for the benefit of the judgment creditor but primarily for the benefit of the insured. The plaintiff therefore answers to the description of a creditor beneficiary. Such a beneficiary has no rights under the statute but has been adjudged by the courts of the state to have a substantive right under the common law of the state to recover against the promisor in a suit in equity.", citing Williston on Contracts, §358, Note 3; *Petty* v. *Warren,* 90 W. Va. 397, 110 S. E. 826; *King* v. *Scott,* 76 W. Va. 58, 84 S. E. 954; *Johnson* v. *McClung,* 26 W. Va. 659; *Criss* v. *U. S. F. & G. Co.,* 105 W. Va. 380, 142 S. E. 849; *Meade* v. *United States Casualty Co.,* 111 W. Va. 504, 163 S. E. 8. See 49 W. Va. L. Q. 132; 44 W. Va. L. Q. 149.

We now consider the trial court's holding that the claimants can not maintain suit for the reason that the provisions of the contract relating to arbitration were not fully complied with. It seems not disputed that Provisions 1, 2, 3 and 4 of that part of the contract, set out under "SETTLEMENT OF LOCAL AND DISTRICT DISPUTES", quoted above, were fully complied with. The board created under Provision 4, however, failed to agree, and no further attempt appears to have been made, by any of the parties, to arbitrate the matters in dispute. It would seem clear that the employees, having failed to obtain an

award by the board, were under a duty to go forward with the arbitration procedure, as required by Provision 5 quoted, if the arbitration procedure was to be followed. But claimants say they were not, under the applicable rule of law, required to arbitrate the matters in dispute before instituting their action or suit, but that they could, at any time before the return of an award, abandon the arbitration procedure and sue. Defendant's position is that the language used in the contract relating to arbitration creates a condition precedent to any right of action, and that claimants can not maintain this proceeding, for the reason that they did not follow through the arbitration procedure.

In *Lawson* v. *Williamson Coal & Coke Co.*, 61 W. Va. 669, 57 S. E. 258, Point 11, syllabus, this Court held: "To prevent resort to an action at law for breach of a contract, in the first instance, on the ground that the defendant is entitled to a determination of the matter in controversy by an arbitration, it must appear, not only that the contract provides for an arbitration in such case, but also that it has been made a condition precedent to such right of action." To the same effect are *Kohlsaat* v. *Main Island Creek Coal Co.*, 90 W. Va. 656, 112 S. E. 213; *Flavelle* v. *Red Jacket Con. Coal & Coke Co.*, 82 W. Va. 295, 96 S. E. 600; *Moore* v. *Hope Natural Gas Co.*, 76 W. Va. 649, 86 S. E. 564; *Kinney* v. *Baltimore etc. Relief Association*, 35 W. Va. 385, 14 S. E. 8, 15 L. R. A. 142. See Annotation to *Blodgett Co.* v. *Bebe Co.*, 190 Cal. 665, 214 P. 38, 26 A. L. R. 1070. In the Annotation to *Radiator Specialty Co.* v. *Cannon Mills*, 97 F. 2d 318, 117 A. L. R. 299, the author points out that such a condition precedent may arise by necessary implication, in this language: "It is possible for parties to make a submission to arbitration a valid condition precedent to a suit on the contract, and whether they have done so in any given case depends upon the language of the agreement construed as a whole. Where, by the same agreement which creates the liability, the ascertainment of certain facts by arbitrators or appraisers is expressly made a condition precedent to a right of action thereon, or is by

necessary implication essential to the accrual of the cause of action itself, suit cannot be brought until the award is made, unless the condition is dispensable and performance is excused by waiver or for other good cause. * * *." *Jones* v. *Enoree Power Co.,* 92 S. C. 263, 75 S. E. 452; *Canal Co.* v. *Coal Co.,* 50 N. Y. 250; *Holmes* v. *Richet,* 56 Cal. 307, 38 Am. Rep. 54; 3 Am. Jur., Arbitration and Award, Section 35.

Applying these authorities, the Court is of the opinion that the wording of the provisions of the contract, in the instant case, relating to the arbitration of matters in dispute, creates a condition precedent to the right of employees to sue, and, the procedure for arbitration provided in the contract not having been complied with by claimants, that they can not maintain this suit. The language of the provision set out under the subheading "MISCELLANEOUS", quoted above, is clear and unambiguous. The word "exclusively" is of significance, and must be given some effect; and, in its context, precludes any right of action or suit until after the procedure provided by the contract for arbitration has been followed through.

The conclusion reached makes it unnecessary to consider the other questions presented. The action of the Circuit Court of McDowell County in dismissing the cause must be affirmed.

The writer of this opinion does not consider the language of the contract relating to arbitration sufficient to create a condition precedent to the right to sue, either expressly or by necessary implication. He would, however, affirm the action of the circuit court upon a ground he deems unnecessary to discuss.

*Affirmed.*