David L. ALONSO, Plaintiff,

v.

KAISER ALUMINUM & CHEMICAL
CORPORATION, a corporation,
Defendant.

Civ. A. No. 70-16.

United States District Court,
S. D. West Virginia,
Charleston Division.

Nov. 29, 1971.

Paul Zakaib, Jr., Charleston, W. Va.,
for plaintiff.

John J. Nesius, So. Charleston, W.
Va., for defendant.

MEMORANDUM OPINION

KNAPP, District Judge.

On January 30, 1970, plaintiff, David L. Alonso, filed a complaint against Kaiser Aluminum & Chemical Corporation seeking damages for the alleged willful and malicious accusations and conduct of Kaiser Aluminum & Chemical Corporation, by and through its agents, servants and employees, causing plaintiff to lose his position of employment with the defendant and damaging his personal reputation, ability to seek and hold employment, his credit standing, and his emotional health and well-being. The defendant, Kaiser Aluminum & Chemical Corporation, hereinafter referred to as Kaiser, filed an answer on February 20, 1970, denying the foregoing allegation and further defending on the grounds that the discharge of the plaintiff was proper and that plaintiff availed himself of the full grievance procedures available under an agreement between plaintiff's union and Kaiser, as hereinafter described in more detail, and that the discharge was upheld by an arbitrator under said procedure.

Subsequent thereto, on October 16, 1970, the defendant filed a Motion for Summary Judgment on the ground that no genuine issue exists as to any material fact and that defendant is entitled to a judgment as a matter of law. The motion is based upon the answers of plaintiff to defendant's interrogatories and the affidavits of Alexander Porter and Tom Miller.

The facts which result in plaintiff's bringing this suit may be summarized as follows:

The plaintiff and one L. Crotty were employees of Kaiser. Approximately 15 minutes after midnight on January 30, 1968, a guard foreman, Ross King, at Kaiser was descending a stairway near a certain vending machine area in the eastern part of Kaiser's plant in Ravenswood, West Virginia, when he allegedly observed from approximately 25 feet, 2 employees standing by a large trash receptacle known as a lugger. One of the employees, Dave Alonso, was, according to Mr. King, shaking money from an 18-inch metal cylinder-like box (commonly known as a money box) into a large cardboard box. This so-called money box had been removed from a nearby vending machine that had been the subject of a forced entry. Mr. King approached Mr. Alonso and Mr. Crotty, the other employee involved, and took from Mr. Alonso the cardboard box into which the money was being shaken. Mr. King saw Mr. Alonso thrust the metal box into a 5' x 6' trashcan. Mr. King also took two one dollar bills from the left hand of Mr. Alonso who allegedly had been shaking the money from the metal box into the cardboard box. Subsequent thereto, on January 31, 1968, the Company issued a 5-day suspension prior to discharge to Mr. Alonso and Mr. Crotty, basing their disciplinary action on Group 1, No. 3, of the Company Rules of Conduct which provide for suspension upon stealing company property or anyone's property on company premises. A discharge hearing was held on January 31, 1968, and on February 1, 1968, the suspension was converted to a discharge. Subsequent to the Company converting the suspension to discharge, a Step 4 grievance meeting was held, and on February 8, 1968, the grievance was answered upholding the discharge action. Subsequent thereto and pursuant to the agreement between the United Steel Workers of America of which plaintiff is a member and Kaiser, an arbitration hearing was held in Parkersburg, West Virginia, on March 15, 1968. At that time testimony was received. Foreman King's account of the incident was as hereinbefore described. The plaintiff and Mr. Crotty testified that they found the money in the cardboard box at the load lugger and did not see the metal box. Both agreed that it looked like a "set-up", a baited trap left to lure the innocent passerby, and having satisfied their curiosity were starting to leave the load lugger when Plant Protection Foreman King came upon the scene. Mr. Alexander Porter, the Arbitrator duly selected

by authorized representatives of United Steel Workers of America and Kaiser to arbitrate the grievances arising from the discharge of the employees, upheld the discharge, basing his opinion upon the evidence and the arguments of the persons representing the parties. His decision was embodied in a 9-page opinion attached to the affidavit filed by defendant with its Motion for Summary Judgment.

Filed with the affidavit of Tom Miller was a copy of the agreement between Kaiser and the United Steelworkers of America. Article 13, page 72, sets out the procedure to be followed in discharge cases. This procedure provides that whenever the Company concludes that an employee's conduct justifies suspension or discharge, he first shall be suspended. That suspension is not to be less than 5 calendar days during which time he may request a hearing and a statement of the offense before the Department Superintendent or his designated representative, with his Grievanceman present. After the hearing, the Company may conclude whether the suspension shall be converted into a discharge. In the event a disposition results in affirmation of a discharge, the employee may within 5 days file a grievance in Step 2 which shall be deemed to have been appealed to Step 4 of the Grievance Procedure under Section C, Article 10, and a Step 4 meeting shall be held and a decision made within 5 days from the date of the filing of the grievance. Step 5 provides for further consideration of the grievance by appeal to an impartial Umpire. It would appear to the Court from the evidence presented that these steps were followed in the instant situation. Article 10, page 70, provides that the decision of the Umpire shall be final and binding on the parties. The contract further provides that the sole forum of either employees or the union alleging violation of contract provisions by the Company is the Grievance Procedure set out therein.

It is the defendant's contention that the plaintiff, having unsuccessfully pursued his claim that he was discharged without proper cause through the grievance machinery, is now precluded from litigating the same claim of improper discharge in the courts.

 The question of improper discharge is one which has infrequently been raised in the courts. In West Virginia, plaintiff's right to continued employment is dependent upon the agreement between his union and defendant. Absent such an agreement affecting those rights, plaintiff's employment would be merely at will and his discharge therefrom would give rise to no cause of action on his part regardless of the reason given for termination. Moreover, when plaintiff chooses to rely upon an agreement for his rights, he cannot disregard provisions necessarily incident to the enjoyment of those rights. Hilton v. Norfolk & Western Railway Co., D.C., 194 F.Supp. 915 (1961). In the instant case, plaintiff agreed to process his claim through the machinery set up by the agreement between his union and Kaiser. The determination of the Arbitrator under the terms of the agreement was to be final and binding. Plaintiff, however, being dissatisfied with the result now asserts his discharge was a result of malicious and willful actions of agents or employees of Kaiser working within the scope of their authority, and seeks redress of his grievance of an allegedly unjust discharge in this action for damages against his employer.

Courts have been very reluctant to disturb the findings of an Arbitrator absent some compelling reason. In Pettus v. Olga Coal Co., 137 W.Va. 492, 72 S.E.2d 881 (1952), the West Virginia Supreme Court held that a provision in a contract between a coal company and a labor union, as bargaining representative of the company's employees, that a local dispute should be settled and determined exclusively by machinery provided in the section of the contract requiring settlement of such disputes by arbitration, created a condition precedent to employees right to sue for breach of contract. In Hilton v. Norfolk & West-

ern Railroad Company, supra, an employee brought an action against the company alleging he was improperly "laid off." The Court granted Summary Judgment for the defendant because the plaintiff had not exhausted the remedies provided by the collective bargaining agreement. In that case the contract had expressly provided that exhaustion of administrative remedies was a condition precedent to a court action. The Court further found that, absent a statute to the contrary, contractual limitations for bringing an action by an employee for an alleged breach of a collective bargaining agreement are generally valid and enforceable. It would appear from a reading of the West Virginia cases that only where there is a breach of a contract and administrative remedies have been exhausted will the courts intervene. In the instant case, the administrative remedies were exhausted. The Court is then left with the question of whether there is a breach of the contract. Plaintiff makes no allegations that the contract was breached nor does he contend that his claim for wrongful discharge was one not covered by the grievance procedure provided in the agreement between his union and Kaiser. Moreover, he does not contend that the union failed faithfully to represent him. Nor does he charge fraud on the part of the Company or the union. The grievance procedure was followed and he was dissatisfied with the decision. Courts have generally held, that when disputes arise within the scope of collective bargaining agreements, the parties are relegated to the remedies provided in that agreement. Haynes v. United States Pipe & Foundry Co., 362 F.2d 414 (5th Cir. 1966).

■ Plaintiff has conceded that generally speaking an adverse arbitration finding on the employee's grievance precludes his right to bring a civil action for damages arising from the dispute which gave rise to the discharge. However, he contends that an exception to that rule arises where there is a "manifest disregard" of the law by the arbitrator. In support thereof the plaintiff cited Ludwig Honold Mfg. Co. v. Fletcher and United Automobile Workers, Local 416, 405 F.2d 1123, 1128 (3 Cir. 1969), wherein the Court held in syllabus 7 the following: "Interpretations of labor arbitrators must not be disturbed so long as they are not in 'manifest disregard' of the law."

■ Plaintiff further argues that in view of the Ludwig case the ruling of the arbitrator violated a specific command of our law requiring that a charge of theft be proven beyond all reasonable doubt. A careful reading of the Ludwig case, supra, reveals that "manifest disregard" of the law refers to the interpretation of contract provisions by the Arbitrator. Only where there is a "manifest disregard" of the provisions of the bargaining agreement, unsupported by the principles of contract construction and shop law, may reviewing Courts disturb the finding. In discharge cases, Arbitrators have generally held that to support the discharge of employees for theft, the employer must prove the employee's guilt beyond a reasonable doubt. Thrifty Drug Stores Co. Inc. v. Warehouse Processing & Distributing Workers Union Local 26, I. L. & W. Union, 50 LA 1253. Plaintiff argues that the Arbitrator "manifestly disregarded" the standard of "beyond a reasonable doubt" in finding that the version presented by the Company was credible and that the version favoring the plaintiff was incredible citing State v. Kelly, 105 W.Va. 124, 141 S.E. 633, wherein the Court held that "When two inferences, equally plausible, may be drawn from the evidence, the law does not permit the jury to adopt the one more unfavorable to the accused."

The foregoing principle is universally accepted. However, it is to be noted that the Arbitrator at the hearing of the evidence in the instant situation did not find the two versions presented to be equally plausible. He found one to be completely incredible. In State v. Bailey, 151 W.Va. 796, 155 S.E.2d 850 (1967), the Court held that the standard

"beyond a reasonable doubt" did not mean that the finding of guilt must exclude every vestige of doubt, but that the requirements are met if the evidence is such that the finding of guilt is based on moral certainty. The hearing examiner in the arbitration proceedings giving rise to the instant case weighed the evidence and found plaintiff's story to be incredible.

Plaintiff makes much reference to Dewey v. Reynolds Metals Company, 291 F.Supp. 786 (D.C.Mich.1968) wherein plaintiff was discharged for refusing to work on Sundays because such work violated his religious beliefs. In that case the Court found that the Arbitrator had not dealt with the provisions of the Civil Rights Act and the requirements of the First Amendment to the Constitution which guarantees freedom of religion. The Court further found that if the arbitration procedure, which exists as a result of Court approval, is permitted to dispose of disputes involving substantial rights without heeding constitutional protections, the Courts would find themselves supporting and giving credence to decisions which, if rendered by the Court, would be a violation of the provisions of the First Amendment relating to religious freedom, or some other essential constitutional protection. This Court cannot equate the instant situation with that presented in *Dewey, supra.* That case is clearly distinguishable. Dewey, because of his religious beliefs, refused to work on Sunday and was discharged as a result thereof. A discharge based upon those grounds is clearly in violation of the provisions of the First Amendment of the Constitution. In the instant case, under the facts presented and the procedure followed, no constitutional rights were denied plaintiff. Plaintiff was not charged in a criminal action with the allegation of theft which lead to his discharge. What plaintiff would have this Court decree is that the procedural and substantive complexities of a criminal trial must be grafted into labor arbitration procedures. This is not and never has been the law. The Constitutional guarantees afforded one accused of crime are for his protection and are too well accepted and observed to require further comment.

■■ That arbitration is the desired method of settling labor disputes has long been recognized by the courts. In United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, the Supreme Court used this language:

"A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in collective bargaining agreements."

Our law, however, has never required that the procedure in arbitration hearings comply with the requirements of Court trials. Indeed, such a requirement would make so onerous and burdensome determinations under the grievance procedure that it would be largely unworkable.

■ The parties herein agreed upon a method for final adjustment of all grievances. They further agreed that this would be final and binding upon the parties involved. In accordance with this contractual obligation, plaintiff's grievance was submitted to an Arbitrator. This clearly was a matter subject to the contractual requirement of arbitration. A party is entitled to no more than he bargained for and received under the contract. Chambers v. Beaunit Corporation, 404 F.2d 128 (6 Cir. 1968). Without such agreement, under West Virginia law, defendant could discharge plaintiff at will without reason. Inasmuch as plaintiff's right of action with respect to alleged wrongful discharge arose under the contract, plaintiff is bound by all provisions of that contract. Plaintiff was accorded all rights available to him under the contract to which he was subject.

For the reasons hereinbefore set forth, defendant's Motion for Summary Judgment is granted.