**J. C. HILTON, Plaintiff,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, a corporation, Defendant.**

**Civ. A. No. 467.**

United States District Court
S. D. West Virginia.

June 5, 1961.

D. Grove Moler, Mullens, W. Va., for plaintiff.

Joseph M. Sanders, Bluefield, W. Va., for defendant.

FIELD, Chief Judge.

The original defendant in this diversity action was The Virginian Railway Company. During the pendency of the action The Virginian Railway Company merged with the Norfolk and Western Railway Company and by proper order the latter Company has been substituted as defendant herein in the place and stead of the Virginian. In his original complaint, the plaintiff charged that he had been improperly deprived of his seniority rating and sought reinstatement in his job classification as well as the wages which he alleged he would have been entitled to receive during the period of his improper layoff. The defendant filed its motion to dismiss this complaint contending, among other things, that jurisdiction of the subject matter was vested exclusively in the National Railroad Adjustment Board under the provisions of 45 U.S.C.A. § 153

(i). While the late Judge Ben Moore did not formally rule on the motion, he indicated to counsel that he considered defendant's motion meritorious. Thereupon counsel for plaintiff moved that he be permitted to file an amended complaint which motion was granted. The factual content of the amended complaint was substantially the same as the original but the plaintiff charged that he was wrongfully discharged from his employment and sought damages for such discharge. The defendant filed an amended answer to the amended complaint and later filed its motion for summary judgment, which motion was supported by affidavits and depositions. In addition thereto, counsel stipulated copies of certain seniority lists relevant to this controversy.

From the record it would appear that there exist no genuine issues as to any of the material facts necessary to the consideration of this motion and accordingly it is a proper case for summary disposition. Briefly, the facts are as follows. Plaintiff was first employed by the Virginian in the year 1937 and for some time prior to his alleged discharge held the classification of machinist's helper. He was a member of a trade union designated System Federation No. 40, Railway Employes Department A. F. of L. On January 1, 1943, the union and defendant entered into a collective bargaining agreement covering, among other things, the working conditions, rates of pay, seniority and grievances of the employee members. This agreement was amended in 1950 and again in 1954 and as amended was in effect from January 1, 1943, through the date of the subject controversy.

As a union member, plaintiff acquired seniority status and periodically his name appeared on the seniority list for Elmore, West Virginia, that being the shop installation in which plaintiff performed his work. As of January 1, 1955, that being the last date on which plaintiff's name was published in the seniority list, he had a seniority standing of No. 8 as a machinist's helper at

Elmore. By reason of a force reduction, the plaintiff was furloughed on or about May 6, 1954, although he worked briefly thereafter at the shops at Mullens, West Virginia, until May 17, 1954. On or about May 1, 1954, the plaintiff had rented a dwelling at Corinne, West Virginia, owned jointly by the defendant and Wyoming Land Company and, under the provisions of his lease, he was required to pay the monthly rental in advance on the first day of each month at the office of the defendant's Master Mechanic at Mullens, West Virginia. During the period from June 1 through November, 1954, the plaintiff paid his rent at such office and from time to time inquired about the possibility of returning to work. However, he did not file with the Master Mechanic nor the local chairman of his craft a record of his current address during the month of November, 1954, as required by Rule 25(c) of the collective bargaining agreement.[1] The requirements of this rule had been called to the attention of the furloughed employees by the bulletin advising of the force reduction posted at the Elmore shops on May 7, 1954.

An investigation relative to the failure of plaintiff and certain other employees to file such records was held in the Master Mechanic's office at the Mullens shop on January 18, 1955. At that hearing the employees present designated J. W. Munsey, General Chairman of their craft union, to act as their representative. Mr. Munsey conceded that the employees had failed to comply with the provisions of the rule but asked that they be granted an extension of time to renew their addresses. At the investigation the plaintiff gave the following reason for his failure to file his address: "I have been right here and asking the roundhouse foremen every week when I could go to work; and I have been in the Master Mechanic's office every month to pay my rent and they knew right where I was." Thereafter, under date of February 4, 1955, L. C. Kirkhuff, Superintendent of Motive Power of the Virginian, advised the plaintiff by letter that his name was being removed from the seniority roster for failure to file his address in November, 1954, as required by Rule 25 (c). Under date of March 1, 1955, Munsey, as General Chairman of Machinists, wrote Kirkhuff asking that plaintiff's seniority be restored which request was denied by letter dated March 8, 1955.

Thereafter, under date of March 29, 1955, Munsey directed a letter to G. M. Cornell, Assistant to the President of the Virginian Railway, advising him of Kirkhuff's action and asking that consideration be given to the plaintiff and the other employees relative to the restoration of their seniority. Under date of April 13, 1955, Cornell replied to Munsey stating that the provisions of Rule 25(c) could not be abrogated but suggesting that as a special concession he would be agreeable to adding the names of the individuals involved at the bottom of the current Elmore seniority list in their previous order. However, Munsey and the affected employees did not see fit to accept this suggestion. Plaintiff admits his participation in the investigation held on January 18, 1955, and his representation by Munsey on that occasion. However, he denies that he

1. Rule 25(c) reads as follows: "An employe laid off by reason of a force reduction must file, within ten (10) days of date laid off, a record of his address. Such address must be filed with the officer notifying him of the reduction with a copy to the local chairman of his craft. Furloughed employes must, during November of each year, file with such officer, with copy to the local chairman of their respective crafts, a record of their current address. Failure to file address at time furloughed, failure to file address during November of each year when furloughed, or failure to report for duty on bulletined new job or on bulletined vacancy within ten (10) days after notice shall have been mailed to last recorded address will automatically sever employe's relations with the Company unless such time is extended by mutual agreement between local officials and local chairman. A furloughed employe who refuses a call for a non-bulletined vacancy will not forfeit his seniority."

authorized or directed Munsey to appeal from the decision of the representative of the Master Mechanic, and for the purposes of passing on this motion, I will assume that Munsey's activities subsequent to the initial investigation constituted nothing more than a gratuitous and independent effort on his part.

Defendant takes the position that the failure of the plaintiff to file the record of his address with the Master Mechanic in November, 1954, under the terms of the agreement automatically severed his relations with the Company. The plaintiff concedes that he did not file a record of his address as required by the rule but contends that his address was known to the Master Mechanic and since he was a tenant and occupant of one of the houses owned by the defendant and paid his rent at the Master Mechanic's office, the defendant is estopped to deny that he complied with the essentials of the rule and, in fact, had a continuing record of his address which extended through the month of November, 1954. A similar contention was made in Sanders v. Louisville & N. R. Co., 6 Cir., 144 F.2d 485, 486, and the Court, in rejecting such argument in that case, said:

"The evidence shows that seniority rights are matters of concern to all men listed on the seniority roster; that the roster was published periodically in order that those who were entitled to places thereon should be able to check the relative positions on the list for the purpose of preserving their rights of seniority. * * * Sanders and McTeer do not deny this, but they each contend that the master mechanic at all times had personal knowledge where each of them lived, and that the filing of the address was therefore unnecessary because the company, through its master mechanic, had the notice which was required by the rule to be given. If this case dealt only with the rights of Sanders and McTeer, this argument might have some weight; but

the rights of all those listed on the seniority roster are involved. In order to eliminate mistake, controversy, and possible discrimination of favoritism, a written notice of this kind was required by the contract, and the District Court was correct in finding that the failure to file the address was fatal to the maintenance of the action."

In my opinion the reasoning in the Sanders case is equally applicable to the present controversy. The provisions of the subject rule involved not only the relationship of the plaintiff and the defendant employer, but affected every fellow employee in the same job classification at the Elmore shops. Plaintiff's contention overlooks the fact that the purpose of the provision was not only to give the employer knowledge of his residence or whereabouts, but provided the procedure by which the employer, the local chairman of his craft and his fellow employees would be formally advised that he desired to maintain and preserve his furlough status and seniority under the agreement.

Plaintiff's rights to continued employment depended upon the agreement between the union and the defendant railroad. In the absence of such agreement plaintiff's employment would have been merely at will and his discharge therefrom would have given rise to no cause of action on his part. Since he must rely upon the provisions of the collective bargaining agreement as the source of his alleged seniority or employment rights, he is not at liberty to disregard the other provisions of the agreement spelling out the conditions necessarily incident to the enjoyment and protection of those rights. Hooser v. Baltimore and Ohio Railroad Company, 7 Cir., 279 F.2d 197. See also Henderson v. Eastern Gas and Fuel Associates, 4 Cir., 290 F.2d 677. Accordingly, it is my ruling that the plaintiff's employment status was automatically terminated as the result of his failure to record his current address

in November, 1954, as required by the rule here in question.

It would appear also that there is another insuperable barrier to the plaintiff's action and that was his failure to exhaust his administrative remedies before resorting to this Court for relief. The collective bargaining agreement sets up a grievance procedure to be used in the event of either disciplinary action or dismissal of an employee. Under this procedure the employee, or his duly accredited representative, has the right of appeal "up to and including the highest official designated by the Management to whom appeals may be made." Rule 33 provides, among other things, as follows: "All claims or grievances involved in a decision by the highest designated officer shall be barred unless within 9 months from the date of said officer's decision proceedings are instituted by the employe * * * before the appropriate division of the National Railroad Adjustment Board or a system, group or regional board of adjustment that has been agreed to by the parties hereto as provided in Section 3 Second of the Railway Labor Act." The plaintiff admits his participation in the initial step of such procedure in the investigation conducted by the Master Mechanic on January 18, 1955. His representative followed through with an appeal up through G. M. Cornell, the highest officer designated to handle such disputes. It is unquestioned that no proceedings were instituted by the plaintiff for submission of his case to the National Railroad Adjustment Board. Plaintiff denies the authority of his union chairman to represent him in the appellate stages of the procedure, but, to my mind, this would add no strength to his position. The fact remains that in either event, plaintiff did not exhaust the administrative remedies required under the terms of the collective bargaining agreement.

■ The law in this regard has been clearly developed in the cases of Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; and Transcontinental & Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325. The composite teaching of these cases is to the effect that the jurisdiction of the Adjustment Board is exclusive in those disputes involving the interpretation of an existing bargaining agreement, the settlement of which has prospective union-carrier ramifications. However, the Board's jurisdiction is not exclusive nor are the administrative remedies provided by the Railway Labor Act mandatory as such in a case in which the individual employee, alleging his wrongful discharge, institutes an action in court for breach of contract. The aggrieved employee may, if he chooses, challenge the validity of his discharge before the Adjustment Board or, in the alternative, treat such discharge as final and resort to the courts. However, if he comes into a federal court, jurisdiction necessarily rests on diversity of citizenship and the substantive law of the forum state must be applied. If the law of the forum requires that the employee exhaust his administrative remedies as a condition precedent to his action for damages, the employee must show that such condition has been fulfilled.

■ The substantive law in West Virginia on this point is set forth in the case of Pettus v. Olga Coal Co., 137 W.Va. 492, 72 S.E.2d 881, wherein it was held that a provision in a collective bargaining agreement that all claims arising therefrom should be settled and determined exclusively by the grievance procedure therein contained creates a condition precedent to any right of action or suit arising under the contract. While the language of the contract in the instant case is not identical with that involved in Pettus, its import seems equally clear and mandatory when considered in the context of the entire collective bargaining agreement. The principles of the Pettus case were recognized in Henderson v. Eastern Gas and

Fuel Associates, supra, and would seem to be appropriate here. While, of course, not controlling in this case, it is worthy of note that the federal substantive law recognizes the arbitration procedure as valid and desirable in the expanding area of labor relations. See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. It is clear from the record that plaintiff herein failed to exhaust the administrative remedies provided by the collective bargaining agreement and accordingly had no standing to institute this action.

In making this disposition of the case I am mindful of the further provision of Rule 33 of the agreement to the effect that it was "not intended to deny the right of the employes to use any other lawful action for the settlement of claims or grievances provided such action is instituted within 9 months of the date of the decision of the highest designated officer of the Carrier." It seems clear from this language that exhaustion of the administrative procedure up through Cornell, as the "highest designated officer of the Carrier," was a condition precedent to the use of "any other lawful action." If, in this case, we treat the administrative proceedings up through Cornell as valid, the initial date of the contractual limitation was April 13, 1955, the date of Cornell's decision rejecting plaintiff's claim. This action was not instituted until July 13, 1956, approximately 15 months later. In the absence of statute to the contrary such contractual limitations are generally valid and enforceable. Order of United Commercial Travelers of America v. Wolfe, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687. See also Hooser v. Baltimore and Ohio Railroad Company, supra; Breeland v. Southern Pacific Co., 9 Cir., 231 F.2d 576. The limitation in the subject contract appears to be reasonable and was recognized as such by the bar-

gaining parties. Accordingly, I find that in this regard also, the plaintiff's action is barred by the express terms of the agreement upon which he must necessarily rely.

The defendant's motion for summary judgment will be granted and counsel may prepare an appropriate order.