GEORGE A. CURRY

*vs.*

PORTLAND TERMINAL COMPANY

Cumberland.   Opinion, June 24, 1963.

*Berman, Berman, Wernick & Flaherty,*
   *by John J. Flaherty,* for Plaintiff.

*Pierce, Atwood, Scribner, Allen & McKusick,*
   *by Fred C. Scribner, Jr.* and *Ralph I. Lancaster,*
                                    for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

MARDEN, J.   On appeal from the granting of summary judgment to the defendant upon motion addressed to the complaint and answer with supporting affidavit.   We are involved with the construction of a collective bargaining agreement dated November 29, 1947, hereinafter termed

"Contract" among the Brotherhood of Railroad Trainmen of which the plaintiff is a member, hereinafter "Union," Maine Central Railroad Company, and the defendant.

Plaintiff became an employee as a yard brakeman on August 12, 1941. On April 26, 1944 he was transferred from the class of yard brakeman to the class of switch-tender and achieved certain seniority status in that class by service up to March 1, 1961. The contract covered rules and rates of pay for trainmen, yardmen and switchtenders, Article 56 specifically applying to switchtenders, and there-in (Art. 56 (a)) making certain articles of the yardmen's agreement applicable to the switchtender class. Of these articles, Article 21, Seniority[1], Article 32, Reduction of Force[2], and Article 56, Switchtenders[3], control our consideration of the controversy.

---

[1] **Article 21 Seniority.** "Section (a). A two (2) year limitation is established on protesting seniority of any Yardman (Switchtender). After having stood that period of time, no protest will be recognized.

"Section (b). Yardmen's (Switchtender's) seniority rosters covering Maine Central System, and Portland Terminal Company, will be revised and corrected as of January 1st of each year and copy furnished General and Local Chairmen. Revised seniority rosters to be posted on bulletin boards each year. * * * *."

[2] **Article 32 Reduction of Force.** "When reducing forces seniority rights shall govern. When forces are increased, employes shall be returned to the service in order of their seniority.

"*Note:* When men are to be dropped from the roster, junior men will be dropped first, and in their relative seniority standing.

"*Note:* Laid off Yardmen (Switchtender's) responding to calls in emergency not in the order of their roster rights, are not protected by the above.

"Employes desiring to avail themselves of this rule must file their address with the proper official at the time of reduction, advising promptly of any change in address and renew their address each ninety (90) days. Employes failing to renew their address each ninety (90) days or return to the service within thirty (30) days after being notified (by mail or telegram sent to the address last given) will be considered out of the service."

[3] **Article 56 Switchtenders.** " * * * **Portland Terminal Company.** "Section (m). Owing to the limited number of men on the present Switchtenders' seniority roster, Portland Terminal Company, and in

Factually the switchtender's seniority roster and the yardmen's seniority roster were never consolidated (Article 56 (m)). Effective January 1, 1948 separate switchtender's and yardmen's seniority rosters were furnished the union and were posted in 1948 and annually thereafter through 1961 (Article 21 (b)). No protest based upon the seniority lists so posted was voiced by plaintiff.

On November 29, 1947 there were four switchtenders in the employ of the defendant, of which the plaintiff was one, and at the end of 1960 three had left the employ of the defendant company leaving plaintiff as the sole remaining switchtender.

On or about December 1, 1960 the defendant abolished the position of switchtender and plaintiff was furloughed as a result of which plaintiff filed a formal protest relative to violation of his seniority rights (Article 32). Following furlough plaintiff failed to comply with the provisions of

view of the extent that Switchtender service is being covered by Yardmen in the Portland Terminal territory, it is agreed —

"That effective December 1, 1947, the present Switchtenders' seniority roster will be combined with the Yardmen's seniority roster so that one roster covering the Portland Terminal Company will be in effect for the consolidated service.

"Such roster consolidation will make no change in the rates of pay or conditions of Switchtenders employed in the Portland Terminal territory.

"Section (n). It is agreed the Switchtenders now holding regular assignments in Portland Terminal territory have preference to these assignments, will remain on them in the same manner as previously and will hold rights against displacement from positions now held. Such Switchtenders will be expected and required to cover Switchtender Service in the Portland Terminal territory as long as it is available.

"Under the above arrangement it is understood, if and when the present incumbents on Switchtenders' positions in the Portland Terminal territory — (four (4) in number) — namely Messrs. Foster, Lehan, Curran and Curry, these being the only men on the present Portland Terminal Switchtenders' seniority roster, leave the service of the Portland Terminal Company for any reason or if their positions as Switchtenders are eliminated, the senior Yardman bidding for such Switchtender vacancy will be assigned to same. * * * *.' "

Article 32, relative filing and renewing his address, resulting in his employment being terminated on March 7, 1961 by notice.

By complaint dated April 7, 1962 plaintiff alleges that his employment was wrongfully terminated in violation of the contract and seeks damages. Defendant stands upon the terms of the same instrument.

It is plaintiff's contention that the provisions of Article 56 calling for a consolidation of the switchtender's and yardmen's seniority rosters effective December 1, 1947 was self executing, that by that provision in the contract the rosters were in fact consolidated, that such consolidation gave him a seniority status applicable to both the switchtender and yardman classes which prevented his furlough on or about December 1, 1960 and inasmuch as he was improperly furloughed and later discharged, the company is answerable to him in damages.

> There is nothing in the pleadings to establish the fact that assuming a consolidation of the rosters, plaintiff was in fact senior to anyone in the switch-tender-yardman classes, but because this litigation is pointless if it were not so, and because the case has been presented to both the Superior Court and this court, with seniority of the plaintiff over someone in the yardman category as implicit, we so accept it.

Our problem is one of seniority governed by Articles 21, and 56, and Article 32, *supra.*

> "The seniority right of a man who toils, * * * is a most valuable economic security, * * * . The right, however, is not inherent. It must stem either from a statute * * * , or from a collective bargaining agreement between employees and their employer."
> *Elder* v. *New York Cent. R. Co.,* 152 F. 361, 364 (under headnote 1-3) (6th Cir. 1945) ; *Fagan* v.

*Pennsylvania Railroad Company*, 173 F. Supp. 465, 470 (under headnote 4) (D. Pa. 1959) ; and 31 Am. Jur., Labor § 107.

See also *Palizzotto v. Local 641, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 170 A. (2nd) 57, 61 (under headnotes 5, 6) (Super. Ct. of New Jersey 1961), affirmed 177 A. (2nd) 538 (1962) ; *National Labor Relations Board v. International Association of Machinists, Aeronautical Industrial District Lodge 727 and Local Lodge 758*, 279 F. (2nd) 761, 765 (under headnote 1) (9th Cir. 1960) rehearing denied July 11, 1960, certiorari denied 81 S. Ct. 221; *Lamon v. Georgia Southern and Florida Railway Co.*, 90 S. E. (2nd) 658, 662 (under headnote 7) (Ga. 1955).

> " 'Seniority', as it applied to trainmen, means: 'the oldest man in point of service * * * is given the choice of jobs, is the first promoted within the range of jobs subject to seniority, and is the last laid off. It proceeds so on down the line to the youngest in point of service.' " *Gunther v. San Diego & Arizona Eastern Railway Co.*, 198 F. Supp. 402, 412 (under headnote 7) (D. Cal. 1961).

In collective bargaining, seniority acquires special attributes.

> " * * * (S)eniority is not a matter which can affect one man alone; it is a definition of his relationship to a number of other individual workers. Seniority, if it is a right at all, is a vested interest in a certain specific permutation of individuals. It is a permutation which, barring disciplinary penalties, deaths, and voluntary withdrawals, can change only by promotions from the top or by additions at the bottom. It is an interest in a 'specific orderly arrangement'. As such, each of the rights is tied to all of the rest. The employer with an agreement to respect seniority which is treated as legally enforceable could not, therefore, offer to change the roster in the interest of a par-

ticular worker without laying himself open to a charge of violating the rights of other employees. Seniority in any business establishment is a whole chain of rights, rotating in accordance with a specific pattern. Thus, it is no mere accident that the collective bargaining agreement should be the typical instrument in which it is incorporated." Christenson, Seniority Rights Under Labor Union Working Agreements, 11 Temple L. Q. 355, 371, cited in *Falsetti* v. *Local Union No. 2026 United Mine Wkrs.*, 161 A. (2nd) 882, 893.

These special attributes assume particular importance in this case. Additionally, of three possible views as to the place which a collective bargaining contract occupies, we adopt the view that assuming the union to be a competent contracting party, the contract between the union and the employer is a completed contract in itself, enforceable in the interest of the union as an organization, or in the interest of individual employees as third parties. See Dr. Christenson's Article, *supra,* and *Donovan* v. *Travers,* 188 N. E. 705 (headnote 1) (Mass. 1934). That the plaintiff has standing to complain is unchallenged. Furthermore, the authority of the union as a given employee's bargaining agent is presumed to continue following the execution of the contract, in the absence of anything to show its termination. Annot. Labor Union-Duration of Authority, 42 A. L. R. (2nd) 1415, 1423.

We now apply these principles to the present controversy.

While the contract here stated that the switchtender's and yardmen's roster "will be combined" effective December 1, 1947, the rosters were never combined and on or about January 1, 1948 and annually thereafter separate seniority rosters for switchtenders and yardmen were posted. Article 21 (a) provided a period of two years during which a yardman or switchtender might protest his posted seniority rating, following which no protest would

be recognized. The periodic publication of these rosters was to enable employees who were entitled to places thereon to check their relative positions on the list for the purpose of preserving their seniority rights. Adverting to the characteristics of seniority discussed above, we are to be reminded that not only were the rights of the plaintiff involved in such rosters, but the rights of all other roster personnel were equally involved. *Hilton* v. *Norfolk & Western Railway Company,* 194 F. Supp. 915, 919 (under headnotes 1, 2) (D. W. Va. 1961), *Sanders* v. *Louisville & N. R. Co.,* 144 F. (2nd) 485, 486 (under headnote 1) (6th Cir. 1944). If the continued posting of these separate rosters from 1948 through 1961, contrary to the contract, brought no protest from the plaintiff, he cannot at this time raise the issue. *Sanders, Supra.* We cannot speculate as to why the rosters were never consolidated, but we are entitled to conclude that the absence of such physical consolidation was for some reason mutually acceptable to the contracting parties (the union still representing the employee's interests) and a factual execution of the contract of which the plaintiff cannot complain against the defendant. His place on the seniority roster for switchtenders and his abscence of place on the seniority roster for yardmen was fixed at the expiration of two years from the publication of the rosters on or after January 1 for the year 1948.

When plaintiff was furloughed on or about December 1, 1960 under Article 32 of the contract, its terms applied, requiring him, if he desired to avail himself of his seniority standing, to file an address with the proper official at the time of furlough, to advise promptly any change in address and renew his address each ninety days. Plaintiff did not do this and urges that his reason for so doing was to preserve his contention that he was unlawfully furloughed. Here again the special nature of seniority must be considered and while his failure to comply with Article 32 may

well have been brought about by his proper but misguided desire to protect his own position, the rights of other employees in knowing their respective positions on the roster, and their several interests in succession to a spot on the roster made vacant by noncompliance by a fellow employee proscribes plaintiff's self-serving conduct. *Hilton, supra* and *Sanders, supra.*

Plaintiff contends that in spite of the physical nonconsolidation of the rosters they were automatically consolidated by the terms of the contract whereby, if he in fact had seniority over any yardman, he was entitled to displace that yardman, and was wrongfully furloughed. Assuming this position, but without so finding, plaintiff derives no benefit. Article 56 protects his switchtender's position as a switchtender, but gives him no seniority over a yardman in a yardman's position, — as was properly determined by the justice presiding on the motion for summary judgment. Plaintiff's seniority status, furlough and subsequent release were not in violation of the contract.

*Appeal denied.*