**STATE of Maine**

v.

**Ronald J. POMERLEAU and David Bourgoin.**

Supreme Judicial Court of Maine.

Sept. 17, 1976.

Joseph M. Jabar, Dist. Atty., Robert Daviau, Asst. Dist. Atty., Augusta, for plaintiff.

Levine, Brody & Levine by Frederick E. Levine, Morton A. Brody, Waterville, for David Bourgoin.

Shiro & Jabar by N. Paul Gauvreau, Burton G. Shiro, Waterville, for Ronald J. Pomerleau.

Before DUFRESNE, C. J., and POME-ROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

Separate indictments returned on May 7, 1975 to the Superior Court (Kennebec County) charged defendants Ronald J. Pomerleau and David Bourgoin, respectively, with having committed the offense of breaking and entering with intent to commit larceny (17 M.R.S.A. § 754). A consolidated trial by jury was ordered (Rule 13 M.R.Crim.P.). The jury found

each defendant guilty as charged. Each defendant has appealed from the judgment of conviction entered against him. We deny the appeals.

As a first point on appeal defendants assert that the presiding Justice committed reversible error in allowing two persons, one age 9 and the other age 13, to be witnesses and give testimony that they had seen the defendants running away from the motor vehicle involved in the break and carrying a large white sack. Defendants maintain that these witnesses had not been shown to be competent.

The issue emerges from the circumstances that prior to offering the two youngsters as witnesses, the prosecution took the precaution to inquire of the Court whether there was any problem as to their taking the oath. The Court thereupon suggested to the prosecutor that he ask the youngsters preliminary questions concerning their understanding of a promise to tell the truth.

Defendants now contend that because the prosecutor chose to act in this manner, he was required to establish the competency of the two youngsters as witnesses, and he failed to discharge that burden.

The claim is without merit.

■ Each of these children, being less than 14 years of age, was below the age at which, as noted in *State v. Ranger,* 149 Me. 52, 55, 98 A.2d 652, 653 (1953),

". . . every person is presumed to have common discretion and understanding, until the contrary appears . . . ."

*State v. Ranger* does not decide, however, that because children under 14 are not presumed competent as witnesses, they are presumed incompetent. Rather, *State v. Ranger* clarifies that as to a child under 14, nothing is presumed either way regarding testimonial competency. The presiding Justice, exercising a sound judicial discretion, is to evaluate the testimonial competency of any child under 14, ad hoc, on the basis of the special circumstances of each situation.

■ Here, the responses of the children to the preliminary questions asked them by the prosecutor, and the substance and nature of their testimony itself, gave no affirmative indication that the two children were incompetent to be witnesses but revealed, rather, that the presiding Justice had acted within the bounds of a sound judicial discretion in concluding that they had requisite intelligence and understanding to be competent witnesses.

In another point of appeal defendants focus upon particular instructions of the presiding Justice to the jury in which the presiding Justice singled out for special attention parts of defense counsel's closing arguments to the jury.

Adverting to the argument of defense counsel that the State had not produced the stolen white sack and stolen money about which witnesses had testified, the presiding Justice told the jury:

". . . there has been some mention here that there is no real evidence brought forward. In other words, the bag itself or the money has not been brought forward . . . I'm sure that I do not have to remind you that if the bag were not found, it could not be brought forward and I don't know whether it was or not, I don't know if it had been found, whether or not it could be identified, you may consider all this.

"Money is the same unless you have it marked and unless you have serial numbers or issue date, it cannot be identified from other money . . . there is no distinguishing feature so that it would be difficult to produce it and there is no testimony here that the money was recovered. So, it has not been offered in evidence. There is no testimony here as to whether or not the bags were recovered, whether or not they had been destroyed, we don't know what has hap-

pened to them and you are not permitted to conjecture."

Addressing another closing argument of defense counsel which attacked the credibility of a witness shown by the evidence to be an accomplice of defendants, the presiding Justice stated to the jury:

"There has been some mention here that he told a falsehood to the police and he now has to substantiate it. I would instruct you that as a matter of law . . . the perjured testimony, if there were any, would occur while he was here under oath and you may determine in you deliberation whether or not he would lie while he was here under oath on the witness stand.

". . . And, you may also determine . . . whether or not he would have reason to lie to the police at the time he gave them the statement. You may also consider that at that time, as I recall the testimony, he was in the presence of his Father, and would he lie to the police in the presence of his Father or would he be more inclined to tell the truth while his Father was present and possibly in a position to chastise him for what he had participated in."

■ These comments by the presiding Justice were error violative of constitutional rights of defendants. By attempting to repair the credibility of a State's witness after it had been attacked in closing argu-

ments of defense counsel, the presiding Justice impaired the constitutional right of defendants to the effective assistance of counsel as embodying, in particular, the right of counsel to use closing argument to seek to persuade the jury in favor of defendant's cause. See: *State v. Mann*, Me., 361 A.2d 897 (1976); *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L. Ed.2d 593 (1975). Further, in the circumstances of the case at bar this action by the presiding Justice was not harmless since the credibility of the accomplice was critical to the success of the State's case.

■ However, that a harmful error of constitutional dimension has occurred during the course of a trial does not require an *automatic* reversal, on appeal, of the resulting judgment of conviction. As we interpret the "harmless error beyond a reasonable doubt" doctrine which was originally pronounced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) in special relation to errors of constitutional dimension, it does not purport to preclude—solely because constitutional error may be involved—the applicability of another independently operative principle, generally acknowledged as necessary to further a sound appellate practice, that in a direct appeal from a judgment of conviction the appellate tribunal will deny cognizance in due course to trial errors not adequately saved at the trial level. *State v. Mann*, supra.[1] We find it consistent,

---

1. Most recently, in *Estelle v. Williams*, —— U.S. ——, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)—a case in which the Supreme Court of the United States has indicated that "procedural defaults" significantly short of the "deliberate by-pass" concept of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) as rested upon the genuine "waiver" analogue of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) can preclude review in federal (post-conviction) habeas corpus proceedings of State Court judgments of conviction involving harmful federal constitutional errors—the Court adverted, in support of its reasoning, to the rule acknowledged as governing in direct appeal situations. In n. 3 of his opinion for the Court majority, Chief Justice Burger quoted

the Second Circuit's statement of the direct appeal principle as follows:

"'Federal courts, including the Supreme Court, have declined to notice [alleged] errors not objected to below even though such errors involve a criminal defendant's constitutional rights.'" *United States v. Indiviglio*, 352 F.2d 276, 280 (CA2 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

The Chief Justice then added in his own language:

"The reason for this rule is clear: if the defendant has an objection, there is an obligation to call the matter to the court's attention so the trial judge will have an opportunity to remedy the situation."

therefore, with the *Chapman v. California* doctrine to hold that in a direct appeal proceeding, as here, the judgment of conviction may be permitted to stand despite the existence of prejudicial constitutional error *not appropriately saved for appellate scrutiny*. In such situation the judgment of conviction need not be reversed unless the appellate tribunal sees fit to take cognizance of the error under the "manifest error-serious injustice" special exception which, as calculated to maintain a basic integrity in judicial proceedings, will not tolerate a conviction produced by a trial fundamentally unfair.

It thus becomes critical, here, whether the errors now being asserted on appeal were adequately preserved at the trial level for review in due course by direct appeal.

As to this, the record shows the following circumstances. When the presiding Justice finished instructing the jury, counsel for the defendant Bourgoin stated:

"I . . . take exception to the charge with respect to the physical evidence of a bag and the money. I think it is proper for the Jury to consider for whatever weight they want to give it, the fact that the State did not offer a bag or in any way explain what happened to the bag or the money. As far as the money not having any distinguishing characteristics, . . . if they had taken the money from one of the Defendants and preserved it and the officer had marked it and they could have identified it in that regard, I think that is proper for the Jury to consider it for whatever weight they want to give it. I think the Jury gets the impression now that they shouldn't consider that at all."

Counsel for defendant Bourgoin made another objection as follows:

"I . . . take exception to the reference . . . [to] the statement made by the . . . reluctant prosecution witness . . . the statement he made in the presence of his Father. I think that is an instruction that creates an impression to the Jury . . . that the Jury can consider . . . that because he made the statement in front of his Father, . . . it was reliable. I think that is more in the nature of argument than an instruction."

Counsel for defendant Pomerleau then told the Court:

"I . . . adopt the objections made by . . . [counsel for defendant Bourgoin] as objections on behalf of Mr. Pomerleau as well."

He further stated:

"I would also like to ask the Court to instruct the Jury in regards to using caution as to testimony of an accomplice, perhaps that ought to be given."

Thus alerted to possible errors in the charge he had given, the presiding Justice gave the jury additional instructions. He told the jury:

"Counsel has called to my attention that I may have indicated to the Jury that the fact that the physical evidence, the bag and the money had not been produced may be of no consequence. If I created that impression, I did not do so intentionally because it's for you to determine. There is no evidence to indicate here whether or not it was ever found, whether or not the bag or bags were ever found and if that is of any consequence, you will determine in you deliberation in the jury room. I did not recall that there was any testimony as to whether it was ever found and I do not conjecture that it was or was not."

The presiding Justice also undertook to comply with the request of counsel for defendant Pomerleau that the jury be given an instruction concerning the use of caution in evaluating the testimony of an accomplice. The presiding Justice additionally instructed the jury:

"I . . . have been asked to give you an instruction as to accomplice testi-

mony. An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent and this is directed at the witness who says he was there and participated and did not wish to testify. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice alone, if believed by the Jury, may be of sufficient weight to sustain a verdict of guilty even though not corroborated or supported by other evidence. However, the Jury should keep in mind that such testimony is always to be received with caution and weighed with great care."

The presiding Justice then repeated various aspects of his original instructions covering the manner in which the jury should evaluate the credibility of witnesses. He re-emphasized to the jury that the members of the jury are the sole judges of the credibility of witnesses.

When he had completed the above-described additional instructions to the jury, the presiding Justice turned to the attorneys for defendants and inquired of them: "Is there anything further?" Counsel for each defendant answered: "No, your Honor."

▮ We view the above described circumstances as establishing that defendants had failed adequately to save for appellate cognizance the claims of error in the instructions of the presiding Justice which are now being asserted on appeal.

Plainly, the presiding Justice had manifested to counsel that he would cooperate in seeking to remedy any errors he might have committed. He undertook to give additional instructions to the jury calculated to meet the objections of counsel to his charge as originally given, and then, in effect, specifically asked counsel whether they had any further complaints. To this specific inquiry, counsel for the defendants expressly answered in the negative, thus presenting neither further objections suggesting that the presiding Justice had inadequately dealt with their prior objections nor objections suggesting that the presiding Justice had committed new errors. In such circumstances defendants must be taken to have represented to the presiding Justice that they were satisfied with the remedial effects of the additional instructions he had given to the jury. In practical effect, in short, defendants abandoned reliance on the objections they had raised to the charge as originally given.[2]

We thus conclude that the defendants failed at the trial level adequately to preserve for appellate cognizance in due course the alleged errors in the instructions of the presiding Justice now being asserted in this direct appeal. Accordingly, notwithstanding that the errors now complained of by defendants are of constitutional dimension and are not capable of being deemed harmless beyond a reasonable doubt, this Court will take cognizance of them as a basis for reversal of the judgments of conviction only if their nature and impact were such, in all the circumstances, as fundamentally to have deprived defendants of a fair trial.

▮ We are satisfied that the instructions of the presiding Justice now under

2. This remains true even as to that objection which had been directed to the original instruction of the presiding Justice questioning whether the accomplice would have lied to a police officer in the presence of his father. Notwithstanding that the presiding Justice's curative instruction omitted to deal with this point specifically, the presiding Justice did give an additional instruction, as requested, charging the jury to scrutinize the testimony of an accomplice with great care and caution. Not only the failure of counsel to renew objections to the presiding Justice's omission to deal with his comments about the presence of the father but also their affirmance to the Justice that they had nothing further of which to complain must be deemed to be counsel's acquiescence that the presiding Justice had adequately dealt with the entire gravamen of their prior objections.

scrutiny had no such impact. We need not presently address, and intimate no opinion upon, whether the presiding Justice's initial discussion tending to dissipate the potential cogency of particular facets of defense counsel's closing arguments to the jury was so prejudicial to defendants that, in the absence of supplemental palliating, or remedial, instructions, the presiding Justice's charge should be taken to have made the trial of defendants an unfair trial. Here, the presiding Justice, after the problems he had created had been called to his attention by counsel, gave the jury additional explanatory instructions which we find sufficiently ameliorating and corrective in nature to justify the conclusion that the charge of the presiding Justice, in its entirety, did not render the trial of defendants fundamentally unfair.

We adhere to this conclusion despite two additional claims of defendants in this appeal which attack other instructions of the presiding Justice solely in a "manifest error-serious injustice" context (plainly, nothing having been done at the trial level to save these claims for appellate scrutiny in due course).

Defendants advert to an isolated extract from the charge in which the presiding Justice observed to the jury that:

"[T]here is no question from the testimony here that there was the breaking in the daytime . . .. [N]o one disputes that there was a break, the dispute is that the Defendants say it was not them, . . .."

Defendants contend that by this language the presiding Justice wrongfully invaded the province of the jury because,'in effect, he was directing a verdict for the State on an essential element of the crime charged.

■ There was no such error. By the instruction in question the presiding Justice was mentioning to the jury only the obvious state of the evidence, that the evidence presented no dispute as to whether a break had occurred. This was not the equivalent of telling the jury that there was no decision for them to make as to whether a break had in fact occurred. Indeed, elsewhere in the charge the presiding Justice had made clear to the jury that the existence of a break was an essential element of the crime which the jury must find beyond a reasonable doubt. Taken as a whole, then, the charge adequately submitted to the jury for its appropriate determination the break element of the crime charged.

The other manifest error-serious injustice claim of defendants pertains to an instruction dealing with circumstantial evidence. The presiding Justice told the jury:

"[O]ur Court has defined circumstantial evidence as having an equal, if not greater weight than direct evidence."

Amplifying this point, the Justice added that since in most cases circumstantial evidence comes from several witnesses and involves a chain of circumstances, it ". . . is usually less likely to be falsely prepared" than the direct testimony of a single witness.

■ While it was erroneous for the presiding Justice to state in the abstract that circumstantial evidence as a general class of evidence tends to have greater cogency than direct evidence, as a category of evidence, such error did not here deprive defendants of a fair trial. In the concrete aspects of this case the guilt of defendants was amply established by an accomplice who testified, as a reluctant witness, that the defendants voluntarily took part in the crime. Also, two independent witnesses placed the defendants at the scene of the crime and identified them as being among a group of boys who were seen running away with the "large white sack." In such circumstances it is appropriate to say of the erroneous instruction now under consideration that, assessed in light of the entire charge to the jury and the totality of the evidence, far from being

error productive of an unfair trial, it was error standing at the entirely opposite pole of the scale measuring the severity of error; it was error harmless beyond a reasonable doubt.

Individual claims of error additionally made by each defendant, respectively, require only brief discussion.

 Defendant Pomerleau asserts that in light of the evidence adduced it was error for the presiding Justice to omit to give a special instruction concerning alibi —even though no such instruction had been requested by counsel. The contention lacks merit. When the evidence generates alibi as a potential issue, no affirmatively new question is presented; the alibi import of the evidence tends only to refute that the defendant was "present" to be the perpetrator of the crime. See: *State v. Jewell*, Me., 285 A.2d 847 (1972). Here, then, it was sufficient that the presiding Justice had (1) instructed the jury that the State bears the burden of proving beyond a reasonable doubt

"the commission of a specific crime with which these Defendants are charged, including the fact that these Defendants are the ones who committed the offense",

and (2) also instructed the jury concerning "actual" and "constructive" presence. Having given these instructions, the trial Justice was not guilty of error in failing to go further and to deal in a special way with alibi, no such request having been made by counsel.

Defendant Bourgoin contends that he was entitled to be acquitted because the indentification testimony as to him was insufficient to establish that he was a participant in the crime. There is nothing to this claim. While in the evidence adduced the particular identification made by each witness was not explicitly pinpointed as to the respective defendants, the totality of the evidence yielded sufficient clarity concerning identifications to justify the conclusion of the jury that defendant Bourgoin committed the crime charged against him.

The entry is:

*Appeals denied.*

All Justices concur.