June TERRIO

v.

**MILLINOCKET COMMUNITY HOSPITAL.**

Supreme Judicial Court of Maine.

Nov. 2, 1977.

Gross, Minsky, Mogul & Singal by George Z. Singal, (orally), Bangor, Libhart & Ferris by Joseph L. Ferris, Brewer, for plaintiff.

Evans & Stoddard by Noel K. Evans, Dan H. Stoddard, (orally), Millinocket, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

A Superior Court jury awarded the plaintiff, June Terrio, damages in the amount of $39,000 against Millinocket Community Hospital (Hospital) for discharging her in breach of an alleged contract of employment. The defendant Hospital appeals from the judgment entered upon that jury verdict. We deny the appeal.

In early 1955, the Hospital hired the plaintiff, then 38 years of age, a trained medical technologist, to develop and administer a medical laboratory. At the outset Mrs. Terrio was the sole laboratory employee and exercised responsibility for purchasing equipment and supplies as well as performing the required laboratory tests. When the Hospital hired other employees to work in the laboratory, Mrs. Terrio remained in charge of the procedures as well as supervisor over the other laboratory personnel. Over the years, visiting pathologists periodically checked her work and were always satisfied with its quality. Several persons who had worked under Mrs. Terrio were impressed by her competence and with the good laboratory morale during their employment with her. The Hospital awarded Mrs. Terrio periodic raises, never questioning the quality of her performance.

The jury heard conflicting testimony in regard to Mrs. Terrio's performance after a resident pathologist took charge of the laboratory in July 1973. Certain witnesses testified to unsatisfactory work and insubordination on her part, as well as abuse of co-workers, all of which she stoutly denied. In the same period of time, Mrs. Terrio was given a pay raise and a choice of better

working hours and was reassured of her job security by the Hospital authorities.

The pathologist's degenerating relationship with Mrs. Terrio finally led him to threaten resignation in an ultimatum issued to the hospital administrator. After trying to make peace, the administrator elected to terminate Mrs. Terrio's employment. At the time of her discharge on February 19, 1975, she was 58 years of age, having been employed by the Hospital for approximately twenty years.

The plaintiff commenced this suit, alleging that her dismissal was without cause and constituted a breach of her contract of employment with the defendant. The parties do not dispute the fact that at no time did they enter into a written contract of employment. The plaintiff argues instead that the defendant's oral promises to her in the context of her entire employment record, coupled with a "Personnel Policy" (Policy) and an "Employees' Retirement Plan" as amended to 1972 (Retirement Plan), resulted in the formation of an enforceable contract of employment for a definite period of time, namely, until her normal retirement age of 65.

■ Prior to trial, the Hospital moved for summary judgment based upon the pleadings and affidavits filed pursuant to Rule 56(c), M.R.Civ.P. Mrs. Terrio's complaint based her breach of contract action solely upon the Hospital's Personnel Policy. The Hospital, in its answer, admitted the existence of the Policy, but denied that Mrs. Terrio had a contract of employment with the Hospital for a definite term. The issue thus posed was whether the Policy, standing alone, could establish that Mrs. Terrio had an enforceable contract of employment for a definite term. The presiding justice denied the Hospital a summary judgment, and the case proceeded to trial. The Hospital now contends on appeal from the final judgment entered upon the jury verdict that the denial of the motion for summary judgment constitutes reversible error. For reasons we shall develop, however, the issue raised by the Hospital in its pre-trial motion was mooted by the subsequent course of the proceedings.

■ In order to recover contract damages for her discharge, Mrs. Terrio had to establish that she had "tenure" in the sense of having an enforceable employment contract with the Hospital for a definite term. It is well settled that a contract of employment for an *in* definite length of time is terminable at will by either party. *Merrill v. Western Union Telegraph Co.*, 78 Me. 97, 100, 2 A. 847, 850 (1886); *Blaisdell v. Lewis*, 32 Me. 515, 516 (1851). Mrs. Terrio, in asserting that the Hospital had promised her employment for a definite period of time, placed initial reliance upon the Hospital's Personnel Policy. The Policy, issued unilaterally by the Hospital, consists of a set of detailed guidelines relating to terms and conditions of employment, such as employee status, health and insurance benefits, work hours, and dismissal and grievance procedures. The Policy, standing alone, does not, however, expressly purport to establish either an employment relationship with any individual or a definite tenure of employment. Had Mrs. Terrio placed sole reliance upon the Policy at trial, her employment contract could only be one for an indefinite term. *Shaw v. S. S. Kresge Co.*, 328 N.E.2d 775, 778–79 (Ind.App.1975).

Such, however, is not this case.

■ At trial, there was admitted in evidence, over the Hospital's objections, a copy of the 1972 version of its Retirement Plan. A clause in the plan expressly declared that the full-time employee's normal retirement date "is the first day of the month on, or after, which you reach your 65th birthday." The Hospital objected to its admissibility on the dual grounds that Mrs. Terrio had failed to lay an adequate foundation and that she had failed to list the plan as an exhibit in her pre-trial memorandum, as required by Rule 16(a)(3), M.R.Civ.P. Although the hospital administrator testified to the contrary, Mrs. Terrio identified the 1972 Plan as the one in effect in February 1975, when she was discharged. As an employee whom the Hospital had a federal

obligation * to keep informed in regard to its Retirement Plan, Mrs. Terrio can fairly be taken to have "knowledge that a matter is what it is claimed to be." Rule 901(b)(1), M.R.Evid. Furthermore, the Hospital can show no prejudicial surprise from the admission of the Retirement Plan, despite its noninclusion in Mrs. Terrio's pre-trial memorandum; the document at issue was the Hospital's own Retirement Plan and the Hospital sought no continuance for even the short time required to get an alleged later version from Millinocket to the place of trial, Bangor. In any event, the only building block in Mrs. Terrio's case provided by the Retirement Plan was the Hospital's normal retirement age (65), and the Hospital does not suggest that whatever retirement plan was in effect in February 1975 differed in that or any other material respect from the 1972 Plan. There was no reversible error in admitting the 1972 Plan.

Although the Retirement Plan buttressed Mrs. Terrio's contract claim, based in her complaint solely upon the Policy, that pair of documents furnishes only terms *relating to* employment, and "no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone." *J. I. Case Co. v. NLRB*, 321 U.S. 332, 334–36, 64 S.Ct. 576, 579, 88 L.Ed. 762, 766 (1944). *Cf. Curry v. Portland Terminal Co.*, 159 Me. 305, 192 A.2d 31 (1963). The case as tried to the jury, however, involved significant additional evidence of certain oral statements made to Mrs. Terrio by the Hospital.

Prior to the arrival of the resident pathologist, Mrs. Terrio had had an exemplary 20-year employment history, marked by repeated raises and gradual improvement in job status and benefits. Not long before her summary discharge, the Hospital, at a meeting attended by the hospital administrator and the pathologist, had discussed with Mrs. Terrio a desirable alteration in her working hours and had given her a raise. Concerned for the security of her

position after the pathologist's arrival, Mrs. Terrio sought reassurance from the administrator, and he represented to her that she had nothing to fear. In fact, only a week before her dismissal, the administrator reassured Mrs. Terrio that she was secure in her job for "the rest of (her) life." This testimony could be interpreted by the jury as evidence of a specific oral promise of employment for a definite term, that is, until "normal retirement age," running directly from the Hospital to Mrs. Terrio, distinct from the general terms *relating to* employment contained in the Policy and the Retirement Plan. *See Dehahn v. Innes*, 356 A.2d 711, 716 (Me.1976); *Congregation Beth Abraham v. People's Savings Bank*, 120 Me. 178, 181, 113 A. 53, 56 (1921); *Herbert v. Ford*, 33 Me. 90, 93 (1851). Although not anticipated by the pleadings, these particular oral statements made to Mrs. Terrio by an obviously authorized agent, in the context of her long service in a position of substantial responsibility (from which she would normally have retired in less than seven years), provided the critical evidentiary support for her contract claim.

At no time in the proceedings did the Hospital object to Mrs. Terrio's thus broadening the evidentiary basis upon which the alleged contract was formed. The Hospital's acquiescence in the expanded scope of the contract issue at trial showed the parties' willingness to go beyond the narrow issue posed by the pleadings and to try by implied consent the issue of whether a contract of employment for a definite term arose from the total factual circumstances, not restricted to the Policy. Rule 15(b), M.R.Civ.P.; *see Boulet v. Beals*, 158 Me. 53, 58, 177 A.2d 665, 667–68 (1962). As our discussion has shown, the additional evidence presented at trial supported a jury finding that the Hospital and Mrs. Terrio had entered into an employment contract for a definite term.

■ When an issue is tried by implied consent, the original complaint is treated in

---

* Welfare and Pension Plans Disclosure Act, §§ 5, 6, 72 Stat. 997 (1958), *as amended by* 76 Stat. 35 (1962) (repealed effective January 1, 1975).

all respects as if amended to incorporate allegations of the evidence produced in support of the issue actually tried. If Mrs. Terrio's complaint is read as though it had alleged the additional grounds relied upon at trial to support her claim, it undoubtedly would have been sufficient to survive a motion for summary judgment. Therefore, the issue of the correctness of the presiding justice's denial of the motion for summary judgment (based as it was upon the unamended complaint) was rendered moot by the course of the subsequent proceedings.

■ On appeal, the appellant Hospital attacks the sufficiency of the evidence to sustain the jury verdict. The appellant failed, however, to file a motion for a directed verdict at the close of all the evidence and therefore has not preserved the point for appellate review. Rule 50(a), M.R.Civ.P.; *International Paper Co. v. State*, 248 A.2d 749, 752 (Me.1968). In any event, the Hospital suffered no prejudice from its neglect. As noted above, the jury heard sufficient evidence to support the finding implicit in its verdict that there existed a contract of employment for a definite term between Mrs. Terrio and the Hospital. Also, there was sufficient evidence, even though in dispute, to justify the jury's finding that the Hospital committed a breach thereof, entitling Mrs. Terrio to contract damages. *Dube v. Simard*, 124 Me. 369, 129 A. 488 (1925); *Winship v. Portland League Base Ball and Athletic Ass'n*, 78 Me. 571, 7 A. 706 (1887); *Miller v. Goddard*, 34 Me. 102 (1852).

■ The Hospital asserts that prejudicial error resulted from the refusal of the presiding justice to grant eight requested jury instructions, and further objects to the charge as given. Specific requests for instructions must be seasonably presented to the court at the close of all the evidence and prior to the judge's charge to the jury in order to preserve for appellate review the issue of whether the requested instructions should have been given. Rule 51(b), M.R.Civ.P.; *Simmons v. State*, 234 A.2d 330, 331–32 (Me.1967). Although the record is not without ambiguity, we conclude that the appellant Hospital seasonably presented the requested instructions to the presiding justice. The appellant, however, failed in the end to object to the presiding justice's attempted paraphrase of the requested instructions and so did not preserve any point on appeal on this score.

Subsequent to the jury charge, the court inquired of counsel whether either party entertained any objections to the charge as given or desired any requested instructions. Counsel for the Hospital responded in the affirmative and called to the court's attention both its requested instructions and several objections to the justice's initial charge. At the close of the sidebar conference, the justice stated:

"(I)n connection with your request, I'm going to tell them generally, because this is all a matter of fact, I'm going to tell them—I'm going to tell them then, you can have your objections after I'm going to tell them what I'm going to tell them. Then you can both object or accept (sic) to anything you want."

The justice then reinstructed the jury in an attempt to comply with the Hospital's requests and to answer its objections. Thereupon, at sidebar, the Hospital's counsel urged that the justice had not given the instructions requested by the Hospital. The justice responded that he believed he had given the substance of the requested instructions, though not in the words requested by the hospital:

"THE COURT: I haven't given it; this is what I've given. In other words, in the manner you have requested, I haven't given it. I've given it my own way. It's supposed to cover what I think would take care of your requests and objections, as long as I can give the law. If I don't even—if I don't give it the way you tell me to give it, if I have covered it, that's adequate. Now, I figure that I've covered it, and given you the benefit of your requested instructions, but not in the words which you gave it.

The court then proceeded to give a further instruction to the jury, provoking yet another objection by the Hospital's counsel.

Again, the court attempted to comply with the substance of the Hospital's complaint by giving the jury an additional instruction. For the third time, the court returned to counsel:

> "THE COURT: . . . Are there any further requested instructions?
>
> "(COUNSEL FOR MRS. TERRIO): Nothing for the Plaintiff, Your Honor.
>
> "(COUNSEL FOR THE HOSPITAL): Nothing further, Your Honor."

■ The nature of this exchange between court and counsel precisely parallels that involved in *State v. Pomerleau*, 363 A.2d 692 (Me.1976). As in *Pomerleau*, the presiding justice gave additional instructions to the jury in an earnest attempt to rectify alleged deficiencies in the initial charge. After reinstructions, the court again solicited objections from counsel, and each expressly affirmed that he entertained no further objections. Our statement in *Pomerleau* is equally pertinent here:

> "Plainly, the presiding Justice had manifested to counsel that he would cooperate in seeking to remedy any errors he might have committed. He undertook to give additional instructions to the jury calculated to meet the objections of counsel to his charge as originally given, and then, in effect, specifically asked counsel whether they had any further complaints. To this specific inquiry, counsel for the defendants expressly answered in the negative, thus presenting neither further objections suggesting that the presiding Justice had inadequately dealt with their prior objections nor objections suggesting that the presiding Justice had committed new errors. In such circumstances defendants must be taken to have represented to the presiding Justice that they were satisfied with the remedial effects of the additional instructions he had given to the jury. In practical effect, in short, defendants abandoned reliance on the objections they had raised to the charge as originally given." *State v. Pomerleau, supra* at 698.

In any event, we have reviewed the charge given by the presiding justice as supplemented by the additional instructions, and are convinced that the jury was fully and adequately apprised of the legal principles applicable to this case.

We have reviewed each contention advanced by the appellant, and finding none with merit, the entry must be:

Appeal denied.

Judgment affirmed.

All Justices concurring.