PAUL H. WOODFORD

*v.*

GLENVILLE STATE COLLEGE HOUSING CORP., *et al.*

(No. 13600)

Decided March 23, 1976.

*Robert M. Harvey* for appellant.

*John R. Haller* for appellee.

NEELY, JUSTICE:

This case involves an attempt by the plaintiff, Paul H. Woodford, to recover payment for materials provided to a sub-contractor in the construction of a faculty and student housing facility on the Glenville State College campus. In April 1969 Centurion Corporation contracted with Glenville State College Housing Corporation for the construction of a living facility, which was to be known as "Project B," upon property owned by the State Board of Education but leased to the defendant non-profit corporation. The defendant, Glenville State College Housing Corporation, (hereafter, Housing Corporation), was a non-profit corporation chartered in 1967 for the purpose of constructing housing on the Glenville State College campus. The corporation was authorized to borrow necessary funds, to issue securities of the corporation, and ultimately to convey any structures constructed in Glenville to the college.

Centurion Corporation then sub-contracted with a certain Mullins Building and Supply Company to do work on the project, and Mullins in turn purchased materials from the plaintiff which were used in Project B. Between April and November 1970 Centurion defaulted on the contract, having completed 85% of the project, and assigned its rights under the contract to the co-defendant, Amer-Con, Inc. for completion of the remaining 15%.

The plaintiff sought payment from defendants, Amer-Con and Housing Corporation, for over $16,000 of material he had supplied to the project, and when payment was refused, he instituted this action on April 14, 1971 in the Circuit Court of Gilmer County. Plaintiff had delivered his materials under his contract with Mullins in April 1970, but while Centurion had paid Mullins in full on all accounts, Mullins had not paid plaintiff and plaintiff took no steps to perfect a lien against Project B.

When Centurion went bankrupt two other sub-contractors on the project filed liens against Project B, which were perfected and outstanding at the time that Amer-Con undertook to complete the project in the place of Centurion. In order for Amer-Con to receive payments which were due to Centurion for completed work which Housing Corporation was reluctant to pay because of the outstanding liens, Amer-Con and Housing Corporation entered into a contract by which Amer-Con agreed to pay outstanding claims against Project B. The contract between the two is as follows:

"AGREEMENT made this 30th day of November, 1970, in Glenville, West Virginia, between AMER-CON, INC. (hereinafter 'Contractor') and the GLENVILLE STATE COLLEGE HOUSING CORPORATION (hereinafter 'Corporation').

WHEREAS, Contractor, as successor to all the rights of Centurion Corporation, wishes to settle the claims arising out of a contract for ten (10) Faculty Housing Units known hereinafter as Project B between Centurion and Corporation, it is therefore agreed that:

(1) Corporation shall pay Contractor the amount of two hundred-fifty thousand dollars ($250,000) plus any amounts expended over thirty thousand dollars ($30,000) to complete said Project 'B'.

(2) Contractor hereby agrees to be solely, liable and to fully satisfy any and all claims which Cotz & Cirigliano, Inc., dba Western Concrete Company; Paul H. Woodford; and Home and Community Improvement Corporation, all of West Virginia, may have against said Project 'B'.

(3) Corporation shall pay Contractor with tax-exempt bonds which shall be issued as soon as possible. Corporation shall have the right to seek its own means of financing such bonds. In addition, Corporation shall have the right to call upon Contractor to use Contractor's best efforts to find a means to finance said bonds. In all

events, Corporation shall have the duty to be liable for said financing costs, if any.

The plaintiff brought this action against Amer-Con and the Housing Corporation as a third party beneficiary of Paragraph 2 of the contract quoted above. Upon an agreed set of facts the Circuit Court of Gilmer County awarded judgment to the plaintiff. We are compelled to reverse.

I

The plaintiff, Woodford, alleges that he did not perfect a lien against Project B according to the statutory lien procedure provided by *W. Va. Code,* 38-2-1 *et seq.,* because the Housing Corporation was an instrumentality of the State and therefore enjoyed immunity from legal actions by virtue of *W. Va. Const.,* Art. VI, § 35. We disagree with plaintiff's assumption and allegation. This Court has dealt with the issue of the applicability of sovereign immunity to myriad forms of State instrumentalities throughout the Twentieth Century. Due to the seemingly limitless variety of situations in which the issue has arisen and will continue to arise, this Court has never attempted to establish any definitive set of rules to apply to all situations. However, certain general criteria for the application of the doctrine of sovereign immunity in this type of situation may be gleaned from the comparatively recent cases of *Hope Natural Gas Co. v. West Virginia Turnpike Commission,* 143 W. Va. 913, 105 S.E.2d 630 (1958), and *Morgantown v. Ducker,* 153 W. Va. 121, 168 S.E.2d 298 (1969) as well as numerous others cited in the footnotes. The Housing Corporation meets none of these criteria.

For example, the Housing Corporation was not created or granted authority to perform any function on behalf of the State by specific enactment of the Legislature.[1]

---

[1]*See also Mahone v. The State Road Commission,* 99 W. Va. 397, 129 S.E. 320 (1925); *Stewart v. The State Road Commission,* 117 W. Va. 352, 185 S.E. 567 (1936); *Schippa v. West Virginia Liquor*

This is the preeminent criterion established by *Morgantown v. Ducker, supra,* where the following language appears at 153 W. Va. 127, 168 S.E.2d 302:

> "This Court has held in numerous cases that proceedings against boards and commissions, created by the Legislature as agencies of the State, are suits against the State within the meaning of Article VI, Section 35 of the Constitution of West Virginia, even though the State is not named as a party in such proceeding."

Funds for the operation of the Housing Corporation were not appropriated by the Legislature.[2] There was no mandate that revenues received and income produced by the Housing Corporation must or would be paid into the State Treasury rather than expended on its own behalf,[3] and monies available to the Housing Corporation to pay off its debts were not obtainable from a State source.[4] On the contrary, the Housing Corporation was a private, non-profit, corporation with no call upon the State treasury and it was not subject to State control in any way. Its revenues were limited to contributions, income from rent payments from prospective faculty and students, and from borrowed funds. Most importantly, it was not in any regard liable to creditors for amounts in excess of its assets.

---

*Control Commission,* 132 W. Va. 51, 53 S.E.2d 609 (1948); *Barber, Adm'x. v. Spencer State Hospital,* 95 W. Va. 463, 121 S.E. 497 (1924); *Miller v. State Board of Agriculture,* 46 W. Va. 192, 32 S.E. 1007 (1899); *Hamill v. Koontz, Tax Commissioner,* 134 W. Va. 439, 59 S.E.2d 879 (1950).

[2]*See also Hesse v. State Soil Consevation Committee,* 153 W. Va. 111, 168 S.E.2d 293 (1969).

[3]*See also State ex rel. The Board of Governors of West Virginia University v. Sims,* 134 W. Va. 428, 59 S.E.2d 705 (1950).

[4]*See also State ex rel. C. & D. Equipment Company v. Gainer,* 154 W. Va. 83, 174 S.E.2d 729 (1970).

In defense of plaintiff's position that the Housing Corporation was a public corporation and arm of the State, plaintiff maintains that the State Board of Education was not entitled to lease land to which it held title to a private corporation, and cites for that proposition *W. Va. Code* 5A-5-1 [1965] which provides:

"Notwithstanding any other provision of this Code, no department, agency or institution of state government shall lease or offer to lease, as lessee, any grounds, buildings, office or other space except in accordance with this article: Provided that the provisions of this article except as to office space shall not apply in any respect whatever to the state road commissioner or commission."

We find that the cited statute merely prohibits a State agency from being a lessee, but not from being a lessor. The case of *Madachy v. Huntington Horse Show Association*, 119 W. Va. 54, 192 S.E. 128 (1937) stands for the proposition that a State agency may lease land for a public purpose, or to avoid loss of revenue from idle land which is not immediately needed for a public purpose. In addition, it would appear that Chapter 12, Section 7, *Acts of the Legislature* 1957[5] provides for a liberal construction of enabling legislation to permit revenue bond financing of State dormitories under corporate structures similar to the one in question. Consequently, we hold that the Board of Education had authority to lease public land to a private corporation for a charitable purpose, that the Housing Corporation had a valid leasehold, and that Project B was amenable to lien proceed-

---

[5]This bill was enacted by the Legislature in 1957 and became *W. Va. Code*, 25-1-7 [1957], in force at the time of the making of the contracts in issue. In 1969, this Act was repealed by the Legislature when that body gave the powers and authorities of the former Board of Control to the respective boards of governors of individual state institutions. That same 1969 Legislature enacted an identical statute, now *W. Va. Code*, 18-23-3 [1969], except that the words "The state board of control" in the repealed statute were replaced by the words "The governing boards" in the 1969 statute.

ings by which the plaintiff could have perfected his claim against the project.

## II

Plaintiff asserted below that he was a third party beneficiary of the contract; however, under prior cases interpreting *W. Va. Code,* 55-8-12 [1923], this Court has held that in order for a contract concerning a third party to give rise to an independent cause of action in the third party, it must have been made for the third party's sole benefit. *Ison v. Daniel Crisp Corp.,* 146 W. Va. 786, 122 S.E.2d 553 (1961); *United Dispatch v. Albrecht Co.,* 135 W. Va. 34, 62 S.E.2d 289 (1950). While a majority of the Court today questions such a restrictive interpretation of the statute, we find that the plain wording of the contract precludes plaintiff's recovery because not only was it not made for his sole benefit, a point he might have overcome with the majority, it was not made for his benefit at all. Paragraph 2 of the contract said: "Contractor hereby agrees to be solely liable and to fully satisfy any and all claims which ... Paul H. Woodford ... may have against said Project 'B'." The Housing Corporation had paid Centurion all money which it owed, and since Centurion had in turn paid Mullins in full, plaintiff's only claim, if any, was against Mullins, except to the extent that he chose to vindicate his claim through the statutory lien procedures provided by *W. Va. Code,* 38-2-1 *et seq.,* which he inadvisedly chose not to do. The intent of the contract between the Housing Corporation and Amer-Con was not to benefit Woodford, but rather to benefit both Amer-Con and the Housing Corporation by securing for Housing Corporation a release of any outstanding liens against the project and by aiding Amer-Con in proceeding with the contract as successor to Centurion.

The plaintiff attempts to claim an equitable right to payment under *Hartman v. Hotel Company,* 132 W. Va. 307, 52 S.E.2d 48 (1949), and *Pettus v. Olga Coal Co.,* 137 W. Va. 492, 72 S.E.2d 881 (1952) as a third party creditor beneficiary, thus avoiding defendants' legal defense that plaintiff was not the sole beneficiary of the contract.

While an equitable right to enforce a contract as a third party creditor beneficiary exists in West Virginia, the plaintiff is not a third party creditor of either of the two contracting parties. The Housing Corporation is as innocent of wrong doing as is the plaintiff because the Housing Corporation fulfilled its obligation to Centurion. Amer-Con, which stands in the shoes of Centurion, is also innocent as Centurion discharged its obligation to Mullins. *See Atlas Powder Co. v. Nelson,* 124 W. Va. 298, 20 S.E.2d 890 (1942).

## III

In West Virginia mechanic's and materialman's liens are wholly statutory, and a party seeking to avail himself of these remedies must substantially comply with the statutory requirements.[6] *Fisher v. Reamer,* 146 W. Va. 83, 118 S.E.2d 76 (1961); *Gray Lumber Co. v. Devore,* 145 W. Va. 91, 112 S.E.2d 457 (1960). In this case the plaintiff made no effort at substantial compliance, and upon the expiration of the time available to him for the perfection of his lien he lost any and all rights which he may have had against the project to enforce his claim. Consequently, he is now left only with the remedy of suing Mullins on his original contract. Although that cause of action may be unavailing, neither Glenville nor Amer-Con has done anything to give him a right of action against either of them.

Accordingly, the judgment of the Circuit Court of Gilmer County is reversed and the case is remanded with directions to enter judgment for the defendant.

*Reversed and remanded
with directions.*

---

[6]The lien procedure provided for mechanics and materialmen is a cumulative remedy, and independently of the lien, such parties may resort to the ordinary commonlaw remedies, as by an action to recover a personal judgment. The two remedies may be pursued simultaneously, but there can be only one satisfaction. *West Virginia Sanitary Engineering Corp. v. Kurish,* 137 W. Va. 856, 74 S.E.2d 596 (1953).

FLOWERS, JUSTICE, *dissenting:*

I have no quarrel with the law as stated by the majority of the Court in this case. I must respectfully dissent from their conclusion however that the indemnity contract under review was not intended to confer a benefit upon the plaintiff, Paul H. Woodford, who was expressly named in it.

Four months after the latest time the plaintiff could have perfected a lien, the defendant, Amer-Con, signed a contract which recited that it "wishes to settle the claims arising out of a contract for ten (10) Faculty Housing Units known heeinafter as Project B ..." Amer-Con expressly agreed "to be solely liable to and to fully satisfy *any and all claims* which ... Paul H. Woodford ... may have against said Project 'B'." The majority limits the obligation to satisfy "all claims" by supplying the words "already protected by liens." Thus the majority construes the contract as being executed to protect those parties who were already protected (by their liens) and to be a nullity as to the only party who needed protection, the non-lien-holding plaintiff. I cannot follow the logic nor fathom the reasonableness of saying that this contract is only effective when it is not needed and not effective in that instance when it is needed. If the parties had so intended, the plaintiff, whose lien rights had expired months earlier, would never have been mentioned.

I would affirm the judgment of the court below.