In re WILLIAMSON SHAFT AND SLOPE COMPANY, Bankrupt.

Thomas C. SCOTT Trustee in Bankruptcy, Plaintiff,

v.

ISLAND CREEK COAL COMPANY, et al., Defendants.

Bankruptcy No. B–2–77–218.

United States Bankruptcy Court, S. D. Ohio, E. D.

April 30, 1982.

R. C. Gibbs, Columbus, Ohio, for Trustee.

Thomas C. Scott, Columbus, Ohio, Trustee.

Larry E. Staats, Columbus, Ohio, for Silver Knob Sand Co., Inc.

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

R. J. SIDMAN, Bankruptcy Judge.

This matter is before the Court on a Motion for Summary Judgment filed by Thomas C. Scott, the trustee in bankruptcy ("Trustee") for Williamson Shaft and Slope Company, seeking judgment against the Silver Knob Sand Company, Inc. ("Silver Knob"), one of the defendants in this adversary proceeding.

The Court finds the following facts to be essentially uncontroverted. On August 6, 1975, Williamson Shaft and Slope Company ("Williamson") submitted a bid proposal for work on the North Branch Mine No. 1, Island Creek Coal Company ("Island Creek") (Northern Division), located along Buffalo Creek near Baynard and Craigsville, West Virginia, and the job was thereafter awarded to Williamson. Pursuant to Purchase Order No. ND 96740, issued by Island Creek on September 26, 1975, Williamson commenced construction of a concrete-lined rectangular double compartment air shaft at the mine. Materials (concrete) were supplied for the project by Silver Knob from March, 1976, until November, 1976. Work was billed by Williamson to Island Creek as construction proceeded, and the last statement was rendered by Williamson as contractor on June 30, 1977, based on a total estimated cost of $310,956.44.

Neither the final statement nor the final amount due for the work was ever paid to Williamson because of the intervention of various disputes as to amount of work completed, amounts due for various items of work, and claims to the funds by third parties. Silver Knob, as one of the claimants, caused a Notice of Mechanic's Lien to be filed against North Branch Coal Company ("North Branch") in the Office of the Circuit Clerk of Grant County, West Virginia, on December 20, 1976, and on July 7, 1978, Silver Knob filed suit against North Branch to enforce its mechanic's lien. Somewhat later Silver Knob was informed by the office of the Secretary of State of West Virginia that North Branch Coal Company had been voluntarily dissolved on November 25, 1970. Subsequent investigation by Silver Knob revealed that North Branch Coal Company, on August 8, 1969, was conveyed to Potomac Coal Company. Following this transfer the capital stock of Potomac Coal Company was assigned to Hammer Coal Company, a subsidiary of Island Creek Coal Company.

Between the time the Notice of Mechanic's Lien was filed in Grant County, West Virginia, and the time suit was initiated by Silver Knob, the contractor, Williamson Shaft and Slope Company, on February 8, 1977, filed a Chapter XI proceeding in this Court under the provisions of the Bankrupt-

cy Act of 1898. This Chapter XI proceeding was subsequently converted to a Chapter VII case on February 6, 1978.

On January 25, 1980, the Trustee filed a complaint, naming Island Creek Coal Company as defendant and seeking to force Island Creek to pay over to the Trustee the sum of $64,140.68, representing the amount agreed to be owed by Island Creek for the completion of the North Branch project. Island Creek, in its answer, agreed that $64,140.68 was owed, but asserted that Silver Knob, as a supplying materialman, claimed $18,531.91 of that sum for materials last supplied on November 2, 1976. Island Creek also asserted that $12,236.61 of the agreed sum was claimed by the estate of Abe Mono.

The agreed sum of $64,140.68 has been deposited with this Court by Island Creek, pursuant to the Court's order of March 3, 1980, until further disposition by this Court. Silver Knob and the estate of Abe Mono have been brought into this action as impleaded defendants. Settlement has been reached between the Trustee and the estate of Abe Mono concerning that claim, and only the claim of Silver Knob is before the Court on this motion for summary judgment.

The Trustee, in his motion, is asserting that Silver Knob does not have a properly perfected mechanic's lien against Island Creek and, therefore, is not entitled to payment of its claim from the fund on deposit with the Court. Specifically, the Trustee asserts that Silver Knob failed to file suit against the owner of real estate within the required statutory period and thereby lost its mechanic's lien status. Silver Knob, on the other hand, while admitting that it did not timely file suit against the owner of the North Branch Coal Company property, alleges that it nevertheless has a legal lien because of mitigating factors which prevented timely filing, or because it has a claim to the fund based on one of a number of "equitable" theories which it advances.

The issues before the Court are two-fold. First, the validity of Silver Knob's mechanic's lien must be determined. If no valid mechanic's lien is present, the issues presented by the supplemental theories of equitable recovery must be resolved.

■ Because the establishment of a mechanic's lien or materialman's lien is controlled by state law, and because the location of the property at issue here is in West Virginia, this Court must apply the law of the State of West Virginia in order to determine if Silver Knob has a proper claim on the fund.

The existence of a legal mechanic's lien in West Virginia is governed by the provisions of § 38–2–4 of the West Virginia Code which state:

§ 38–2–4. "Lien of materialman furnishing supplies to contractor or subcontractor.

Every person, firm or corporation, which shall furnish to any general contractor machinery or other equipment or supplies necessary to the completion of any building or other structure . . . or improvement appurtenant thereto, for use in the erection, construction, repair or removal thereof, by virtue of a contract between such general contractor or subcontractor and the materialman or furnisher of machinery, or other supplies or equipment necessary to the completion of such general contract, shall have . . . *a lien for his compensation [upon such building or other structure or improvement appurtenant thereto, and upon the interests of the owner thereof in the lot of land whereon the same stands*, or to which it may have been removed, *to secure the payment of such contract price* or other compensation therefor]." (Emphasis added).

To perfect the mechanic's lien, once it arises by operation of law, the materialman or subcontractor must take the steps set out in West Virginia Code § 38–2–11.

§ 38–2–11. "Notice and recordation of lien for supplies furnished to contractor or subcontractor.

For the purpose of perfecting and preserving his lien, every materialman or

furnisher of machinery or other necessary equipment, who shall have furnished material, machinery or equipment under a contract with any contractor or with any subcontractor as set forth in Section Four [§ 38–2–4] of this article, *within sixty (60) days* after he shall have ceased to furnish such material or machinery or other equipment, *shall give to the owner*, or his authorized agent, by any of the methods provided by law for the service of a legal notice or summons, *a notice of such lien . . .* but *such lien shall be discharged and avoided, unless, within ninety (90) days* after such materialman or other furnisher of machinery or other necessary equipment shall have ceased to furnish such materials or machinery or other equipment, *he shall cause to be recorded in the Office of the Clerk* of the County Court of the County wherein such property is situated a *notice of such lien . . .*" (Emphasis added).

Further action to maintain the existing mechanic's lien is mandated by West Virginia § 38–2–34.

§ 38–2–34. "Time within which suit to enforce lien may be brought. . .

Unless a suit in chancery to enforce any lien authorized by this article is commenced *within six months* after the person desiring to avail himself thereof shall have filed his notice in the clerk's office, as hereinbefore provided in this article, *such lien shall be discharged . . .*" (Emphasis added).

Failure to properly perfect or enforce the mechanic's lien results in discharge of the lien pursuant to West Virginia Code § 38–2–34 (set out above) and § 38–2–14, as follows:

§ 38–2–14. "Discharge of lien for failure to comply with article.

The *failure* of any person claiming a lien under this article *to give such notice* as required by Section 11 . . . of this article, or to record such notice as is required by Section . . . 11 . . . of this article, in the manner and within the times specified in such Section, or the failure of any such claimant of any such lien to comply substantially with all of the requirements of this article for the perfecting and preservation of such lien, within the time provided therefor in this article, shall, operate as a complete discharge of such owner and of such property from all liens for claims and charges of any such . . . materialman . . . for any materials, machinery or other necessary equipment claimed to have been furnished in connection with such work." (Emphasis added).

■ It is agreed by the parties that conditions were such that a mechanic's lien arose by operation of law against the property (buildings, structures and underlying real estate) upon which the improvements were made at North Branch Mine # 1 and against the interest of the owner of that property. It is also agreed that Silver Knob properly filed its Notice of Mechanic's Lien against North Branch Coal Company in the Office of the Circuit Clerk of Grant County, West Virginia, on December 20, 1976, a date within sixty (60) days of the date it last furnished materials for the construction project. The problem, therefore, arises with Silver Knob's failure to institute a suit in chancery to enforce its lien within six months of the date the notice was filed in the Clerk's Office in Grant County. Does this failure to institute legal action until July 7, 1978, negate a finding of "substantial compliance" with the mechanic's lien statute such that the lien was discharged, or did the filing of the Chapter XI proceeding by the contractor, Williamson, on February 8, 1977, toll the six (6) month statute of limitations, thereby making Silver Knob's suit timely? What effect does the unrecorded change in ownership of the real estate have upon the requirement that suit be instituted against the owner of the property?

■ This Court holds that Silver Knob no longer has a valid legal mechanic's lien against the property upon which North Branch Mine # 1 is situated. The mechanic's lien which arose in favor of Silver Knob

arose only against the North Branch Mine # 1 property. The lien did not arise against the retainage fund, but rather arose "[upon such building or other structure or improvement appurtenant thereto, and upon the interests of the owner thereof in the lot of land whereon the same stands, or to which it may have been removed, to secure the payment of such contract price or other compensation therefor]." West Virginia Code § 38–2–4. The statute does not grant a lien against the retainage itself, but rather against the real estate upon which the work has been done. If such suit is successful against the land owner, then the land owner would certainly be entitled to proceed against the contractor for reimbursement (if the land owner has already paid the contractor for that work) or to setoff the amount paid to satisfy the mechanic's lien against the retainage held for the contractor. But no lien against the retainage fund itself ever arose through the mechanic's lien statute.

■ Additionally, the structures and underlying real estate upon which North Branch Mine # 1 was located never became property of the bankrupt or of the bankruptcy estate. Therefore, the filing of the bankruptcy petition never stayed execution of the mechanic's lien against the owner of the North Branch Mine property. Since suit was not stayed by the bankruptcy filing, Silver Knob's failure to institute suit within six (6) months discharged its lien against the North Branch Mine property. The fact that suit against the North Branch Mine property, even if initiated in a timely fashion, would have been ineffective because of the unrecorded change in the ownership of the real estate is irrelevant since no such timely suit was initiated. Silver Knob failed to strictly or substantially comply with the provisions of West Virginia law on mechanic's liens.

Having found that no legal mechanic's lien exists, this Court must now determine whether Silver Knob should be allowed recovery based upon any of their "equitable" claims to the fund. This Court determines that, as a matter of West Virginia law, Silver Knob must be denied recovery on all of these supplemental theories.

■ The analysis of West Virginia law as it relates to the supplemental theories of recovery must be made in light of *Woodford v. Glenville State College Housing Corp.*, 225 S.E.2d 671 (W.Va.1976), a case decided by the Supreme Court of Appeals of West Virginia, the state's highest appellate court. *Woodford* presents a fact pattern very similar to the case at bar. In this case Woodford was a materialman to a subcontractor in the construction of a student housing facility on the Glenville State campus. The prime contractor in the action was a corporation known as Centurion Corporation. Centurion subcontracted with Mullins Building and Supply to work on the project, and it was Mullins who purchased materials from plaintiff Woodford to be used in the construction of the facility. The prime contractor, Centurion, went into default and assigned its rights under the project to Amer-Con. Despite this, Centurion had paid Mullins in full on all accounts; but Mullins had not paid the plaintiff, Woodford. Furthermore, plaintiff had taken *no steps* to perfect a lien against the project. Centurion then went bankrupt, and Amer-Con and the Housing Corp. entered into a contract which called for Amer-Con to finish the project and for Amer-Con to pay all the outstanding claims against the project. Included as part of the contract between Amer-Con and the Housing Corp. was an agreement to pay plaintiff Woodford. Woodford brought suit against the Housing Corp. for payment of its $16,000 as materialman based upon what plaintiff considered to be an equitable right to payment as a third-party creditor beneficiary of the contract between the Housing Corp. and Amer-Con. Justice Neely, speaking for the West Virginia Court, held:

"In West Virginia mechanic's and materialman's liens are wholly statutory, and a party seeking to avail himself of these remedies must substantially comply with the statutory requirements. *Fisher v. Reamer*, 146 W.Va. 83, 118 S.E.2d 76 (1976) (see copy attached); *Gray Lumber*

*Co. v. Devore*, 145 W.Va. 91, 112 S.E.2d 457 (1960). In this case the plaintiff made no effort at substantial compliance, and upon the expiration of the time available to him for perfection of his lien he lost any and all rights which he may have had against the project to enforce his claim." (Emphasis added).

*Woodford*, p. 675.

Based upon this holding, Silver Knob loses "any and all" rights of recovery against the fund on deposit with the Court, including whatever equitable rights it feels it has, with the expiration of the time available for perfection of its lien.

Furthermore, it is the opinion of this Court that even without the holding in the *Woodford* case Silver Knob would not be allowed to recover against the fund on deposit with the Court.

■ Silver Knob alleges that it should be allowed to recover against the fund because it is a third-party beneficiary of the agreement between Williamson and Island Creek. However, the *Woodford* case squarely disposes of any possibility of recovery for Silver Knob based upon a third-party beneficiary theory. Justice Neely states in his opinion:

"Plaintiff asserted below that he was a third party beneficiary of the contract; however, under prior cases interpreting W.Va.Code, 55–8–12 (1923), this Court has held that in order for a contract concerning a third party to give rise to an independent cause of action in the third party it must have been made for the third party's sole benefit." *Woodford*, p. 674.

There is definitely no contract here made solely for the benefit of Silver Knob; therefore, Silver Knob cannot be a third party beneficiary as a matter of West Virginia law.

■ Another of Silver Knob's supplemental theories of recovery is the claim that it has an "equitable lien" on the fund deposited with the Court. An equitable lien in West Virginia is described in 12A Michie's Jurisprudence of Virginia and West Virginia, *Liens* § 6, as:

"An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debtor obligation *or is declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.* But it is said that an equitable lien must rest upon a contract, express or implied. Moral obligations alone will not sustain an equitable lien."

From this language it is apparent that a determination of whether or not an equitable lien exists must be done on a case by case basis, according to the particular circumstances of the parties.

It is further stated in Michie's that: "In the case of equitable liens it must appear that it was the intention of the parties that certain specified property should be set aside and appropriated for the payment of a particular debt, that such property had actually been set aside and appropriated for this particular purpose, and it can clearly be identified as the property the parties had in mind at the time. The contract and the nature of the property should be considered in determining whether the contract gives an equitable lien."

■ Thus, an equitable lien is established in West Virginia according to "general considerations of right and justice." In the situation this Court is presented with, Silver Knob is no more wronged than any other creditor in the Williamson bankruptcy, or a creditor in any bankruptcy for that matter, that is forced to take on a pro rata basis with all other unsecured creditors because it did not take the proper steps to perfect its lien and prioritize its claim. It is the opinion of this Court that a finding of "equitable lien" would be an extraordinary finding and is not called for based upon the present factual circumstances.

■ Silver Knob also asserts that it should be allowed to recover from the fund on deposit with the Court because it has a "quasi-contract" with Island Creek. A qua-

si-contract of the type alleged by Silver Knob is best documented in 62 ALR3d *Building and Construction Contracts: Right of Subcontractor Who Has Dealt Only With Primary Contractor To Recover Against Property Owner In Quasi-Contract.* 288 (1975) (cited in Trustee and Silver Knob memos). The general rule is described in § 2 of the annotation as follows:

"As a broad general rule of law, it has been widely held or recognized that, apart from unjust enrichment or from any special statutory rights or remedies, a subcontractor who has furnished labor or materials for the construction or repair of some form of improvement on the lands of another has no right to a personal judgment against the landowner where there is no contractual relationship between them."

Therefore, Silver Knob, without aid of a contractual relationship with Island Creek, can only proceed against Island Creek if it can do so under a special statutory right, such as a mechanic's lien, which it has not properly perfected; or if Island Creek was unjustly enriched by the materials provided. This theory of quasi-contract based upon unjust enrichment is not open to Silver Knob because Island Creek was not unjustly enriched. It is paying for the work and the materials it received. However, it is paying the Trustee. Nevertheless, Island Creek is not receiving something for nothing. Thus, based strictly upon law, there can be no finding in quasi-contract for Silver Knob.

The final "equitable" ground which Silver Knob alleges that it should be allowed recovery on is "reliance." Silver Knob states in its Motion Contra that it relied on the words of a representative from the Island Creek Coal Company telling Silver Knob that it was going to get paid, and it cites the check to Silver Knob that was drafted by Island Creek supposedly to pay Silver Knob's debt. Although this check was never released, Silver Knob states that it did not pursue its own legal remedies because of reliance on this assurance of payment. However, even if Silver Knob did truly rely on Island Creek's assurance of payment, such reliance cannot be used to defeat the Trustee's right to the fund on deposit. A footnote to W.Va.Code Section 38–2–7 states:

"Mechanic's lien is purely statutory and where the complainant in a suit to enforce such a lien has failed to perfect it in a manner prescribed by the mechanic's lien law, the Court *cannot* establish a lien based upon equitable considerations, however meritorious the claim may be." Cite to *Tygart Valley Brewing Company v. Vilter Mfg. Co.,* 184 F. 485 (1910).

Therefore, reliance cannot be grounds for giving Silver Knob the same rights as a statutory lienholder.

With these findings, this Court determines that the Trustee's motion for summary judgment should be, and the same hereby is, granted. A judgment shall issue in accordance with this finding.

IT IS SO ORDERED.